(Slip Opinion) OCTOBER TERM, 2017 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## CHAVEZ-MEZA *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

No. 17–5639.   Argued April 23, 2018—Decided June 18, 2018

The Federal Sentencing Guidelines require a sentencing judge to first identify the recommended Guidelines sentencing range based on certain offender and offense characteristics. The judge might choose a penalty within that Guidelines range, or the judge may "depart" or "vary" from the Guidelines and select a sentence outside the range. See *United States* v. *Booker,* 543 U. S. 220, 258–265. Either way, the judge must take into account certain statutory sentencing factors, see 18 U. S. C. §3553(a), and must "state in open court the reasons for [imposing] the particular sentence," §3553(c). But when it comes to how detailed that statement of reasons must be, "[t]he law leaves much . . . to the judge's own professional judgment." *Rita* v. *United States,* 551 U. S. 338, 356. The explanation need not be lengthy, especially where "a matter is . . . conceptually simple . . . and the record makes clear that the sentencing judge considered the evidence and arguments." *Id.*, at 359.

Here, petitioner pleaded guilty to possessing methamphetamine with intent to distribute. The judge reviewed the Guidelines, determined the range to be 135 to 168 months, and imposed a sentence at the bottom of the range. The Sentencing Commission later lowered the relevant range to 108 to 135 months, and petitioner sought a sentence reduction under §3582(c)(2). Petitioner asked the judge to reduce his sentence to the bottom of the new range, but the judge reduced petitioner's sentence to 114 months instead. The order was entered on a form certifying that the judge had "considered" petitioner's "motion" and had "tak[en] into account" the §3553(a) factors and the relevant Guidelines policy statement. On appeal, petitioner argued the sentencing judge did not adequately explain why he rejected petitioner's request for a 108-month sentence. The Court of Appeals

affirmed.

*Held*: Because the record as a whole demonstrates the judge had a reasoned basis for his decision, the judge's explanation for petitioner's sentence reduction was adequate. Pp. 5–10.

(a) The Government argues petitioner was not entitled to an explanation at all because the statute governing sentence-modification motions does not expressly require a sentencing judge to state his reasons for imposing a particular sentence. See §3582(c)(2). It is unnecessary to go as far as the Government urges, however, because, even assuming the District Court had a duty to explain its reasons when modifying petitioner's sentence, what the court did here was sufficient. Pp. 5–6.

(b) Petitioner contends that a district court must explain its reasoning in greater detail when the court imposes a "disproportionate" sentence reduction—that is, when the court reduces the prisoner's sentence to a different point in the amended Guidelines range than the court previously selected in the original Guidelines range. That argument is unconvincing. As a technical matter, determining "proportionality" may prove difficult when the sentence is somewhere in the middle of the range. More importantly, the choice among points on the Guidelines range often reflects the belief that the chosen sentence is the "right" sentence based on various factors, including those found in §3553(a). If the applicable Guidelines range is later reduced, it is unsurprising that the sentencing judge may choose a nonproportional point in the new range. Pp. 6–7.

(c) Even assuming that a judge reducing a prisoner's sentence must satisfy the same explanation requirement that applies at an original sentencing, the District Court's explanation was adequate. At the original sentencing, petitioner asked for a downward variance from the Guidelines range, which the judge denied. The judge observed that petitioner's sentence was high because of the destructiveness of methamphetamine and the quantity involved. The record from the original sentencing was before the judge—the same judge who imposed the original sentence—when he considered petitioner's sentence-modification motion. By entering the form order, the judge certified that he had "considered" petitioner's "motion" and had "tak[en] into account" the §3553(a) factors and the relevant Guidelines policy statement. Because the record as a whole suggests the judge originally believed that 135 months was an appropriately high sentence in light of petitioner's offense conduct, it is unsurprising that he considered a sentence somewhat higher than the bottom of the reduced range to be appropriate as well. That is not to say that a disproportionate sentence reduction *never* may require a more detailed explanation. But given the simplicity of this case, the judge's awareness of

Syllabus

the arguments, his consideration of the relevant sentencing factors, and the intuitive reason why he picked a sentence above the very bottom of the new range, his explanation fell within the scope of lawful professional judgment that the law confers upon the sentencing judge. Pp. 7–10.

854 F. 3d 655, affirmed.

BREYER, J., delivered the opinion of the Court, in which ROBERTS, C. J., and THOMAS, GINSBURG, and ALITO, JJ., joined. KENNEDY, J., filed a dissenting opinion, in which SOTOMAYOR and KAGAN, JJ., joined. GORSUCH, J., took no part in the consideration or decision of the case.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 17–5639

_____

## ADAUCTO CHAVEZ-MEZA, PETITIONER *v.* UNITED STATES

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

[June 18, 2018]

JUSTICE BREYER delivered the opinion of the Court.

This case concerns a criminal drug offender originally sentenced in accordance with the Federal Sentencing Guidelines. Subsequently, the Sentencing Commission lowered the applicable Guidelines sentencing range; the offender asked for a sentence reduction in light of the lowered range; and the District Judge reduced his original sentence from 135 months' imprisonment to 114 months'. The offender, believing he should have obtained a yet greater reduction, argues that the District Judge did not adequately explain why he imposed a sentence of 114 months rather than a lower sentence. The Court of Appeals held that the judge's explanation was adequate. And we agree with the Court of Appeals.

## I

### A

The Sentencing Guidelines require a sentencing judge to consider certain listed characteristics of the offender and the offense for which he was convicted. Those characteristics (and certain other factors) bring the judge to a Guidelines table that sets forth a range of punishments, for

example, 135 to 168 months' imprisonment. A sentencing judge often will choose a specific penalty from a Guidelines range. But a judge also has the legal authority to impose a sentence outside the range either because he or she "departs" from the range (as is permitted by certain Guidelines rules) or because he or she chooses to "vary" from the Guidelines by not applying them at all. See *United States* v. *Booker*, 543 U. S. 220, 258–265 (2005) (holding the Sentencing Guidelines are advisory). The judge, however, must always take account of certain statutory factors. See 18 U. S. C. §3553(a) (requiring the judge to consider the "seriousness of the offense" and the need to "afford adequate deterrence," among other factors). And, of particular relevance here, the judge "shall state in open court the reasons for [the] imposition of the particular sentence." §3553(c). If the sentence is outside the Guidelines range (whether because of a "departure" or a "variance"), the judge must state "the specific reason for the imposition of a . . . different" sentence. §3553(c)(2). If the sentence is within the Guidelines range, and the Guidelines range exceeds 24 months, the judge must also state "the reason for imposing a sentence at a particular point within the range." §3553(c)(1).

B

We here consider one aspect of the judge's obligation to provide reasons. In an earlier case, we set forth the law that governs the explanation requirement at sentencing. In *Rita* v. *United States*, 551 U. S. 338 (2007), the offender sought a downward departure from the Guidelines. The record, we said, showed that the sentencing judge "listened to each argument[,] . . . considered the supporting evidence[,] . . . was fully aware of defendant's various physical ailments[,]" imposed a sentence at the bottom of the Guidelines range, and, having considered the §3553(a) factors, said simply that the sentence was "'appropriate.'"

*Id.,* at 358. We held that where "a matter is as conceptu-
ally simple as in the case at hand and the record makes
clear that the sentencing judge considered the evidence
and arguments, we do not believe the law requires the
judge to write more extensively." *Id.,* at 359.

　We also discussed more generally the judge's obligation
to explain. We wrote that the statute calls

　　"for the judge to 'state' his 'reasons.' And that re-
　　quirement reflects sound judicial practice. Judicial
　　decisions are reasoned decisions. Confidence in a
　　judge's use of reason underlies the public's trust in the
　　judicial institution. A public statement of those rea-
　　sons helps provide the public with the assurance that
　　creates that trust." *Id.,* at 356.

But, we continued,

　　"we cannot read the statute (or our precedent) as in-
　　sisting upon a full opinion in every case. The appro-
　　priateness of brevity or length, conciseness or detail,
　　when to write, what to say, depends upon circum-
　　stances. Sometimes a judicial opinion responds to
　　every argument; sometimes it does not; sometimes a
　　judge simply writes the word 'granted' or 'denied' on
　　the face of a motion while relying upon context and
　　the parties' prior arguments to make the reasons
　　clear. The law leaves much, in this respect, to the
　　judge's own professional judgment." *Ibid.*

At bottom, the sentencing judge need only "set forth
enough to satisfy the appellate court that he has consid-
ered the parties' arguments and has a reasoned basis for
exercising his own legal decisionmaking authority." *Ibid.*

　When a judge applies a sentence within the Guidelines
range, he or she often does not need to provide a lengthy
explanation. As we said in *Rita,* "[c]ircumstances may
well make clear that the judge rests his decision upon the

Commission's own reasoning that the Guidelines sentence is a proper sentence (in terms of §3553(a) and other congressional mandates) in the typical case, and that the judge has found that the case before him is typical." *Id.,* at 357.

We have followed this same reasoning in other sentencing cases, including *Gall* v. *United States*, 552 U. S. 38 (2007), which we decided the same year as *Rita.* Cf. *Kimbrough* v. *United States*, 552 U. S. 85, 109 (2007) (suggesting a district judge's decision to vary from the Guidelines range may be entitled to greater respect when the judge finds a particular case "'outside the "heartland"'" of the Guidelines). Indeed, the case before us differs from the Guidelines cases that *Rita* describes in only one significant respect. It concerns a limited form of *re*sentencing.

C

The relevant lower court proceedings are not complicated. In 2013, petitioner pleaded guilty to a federal crime, namely, possessing methamphetamine with the intent to distribute it. The judge reviewed the Guidelines, determined that the applicable range was 135 to 168 months' imprisonment and imposed a sentence at the bottom of that range: 135 months. Pursuant to its statutory authority, the Sentencing Commission subsequently lowered the relevant Guidelines range from 135 to 168 months to 108 to 135 months. United States Sentencing Commission, Guidelines Manual App. C, Amdt. 782 (Supp. Nov. 2012– Nov. 2016) (USSG); see also 28 U. S. C. §994(o). Petitioner then sought and obtained a sentence modification. See 18 U. S. C. §3582(c)(2); USSG §1B1.10. He asked the judge to lower his sentence to the bottom of the new range, namely 108 months. But the judge instead lowered it to 114 months, not 108 months. The order was entered on a form issued by the Administrative Office of the United States Courts. The form certified the judge had "considered"

petitioner's motion and "tak[en] into account" the §3553(a) factors and the relevant Guidelines policy statement. App. 106–107 (under seal).

Petitioner appealed, claiming that the judge did not adequately explain why he rejected petitioner's 108-month request. The Court of Appeals rejected his argument. 854 F. 3d 655 (CA10 2017). In its view, "absent any indication the court failed to consider the §3553(a) factors, a district court . . . need not explain choosing a particular guide-lines-range sentence." *Id.*, at 659. Petitioner sought certiorari, and we granted his petition.

## II

### A

The Government, pointing out that this is a sentence-modification case, argues that this fact alone should se-cure it a virtually automatic victory. That is because, unlike an ordinary Guidelines sentencing case, the statute governing sentence-modification motions does not insist that the judge provide a "reason for imposing a sentence at a particular point within the range." Compare §3553(c)(1) with §3582(c)(2). It adds that sentence modifications also differ procedurally from sentencing in that the offender is not entitled to be present in court at the time the reduced sentence is imposed. See *Dillon* v. *United States*, 560 U. S. 817, 828 (2010) (citing Fed. Rule Crim. Proc. 43(b)(4)). As we have said before, "Congress intended to authorize only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding." *Dillon*, *supra,* at 826. These procedural features, the Government asserts, mean that "the court has no duty" to provide an "on-the-record explanation" of its reasons. Brief for United States 12, 19.

We need not go so far. Even assuming (purely for ar-gument's sake) district courts have equivalent duties when initially sentencing a defendant and when later modifying

the sentence, what the District Court did here was suffi-
cient.  At the original sentencing, the judge "must ade-
quately explain the chosen sentence to allow for meaning-
ful appellate review."  552 U. S., at 50; see also *Rita*, 551
U. S., at 356 ("The sentencing judge should set forth
enough to satisfy the appellate court that he has consid-
ered the parties' arguments and has a reasoned basis for
exercising his own legal decisionmaking authority").  Just
how much of an explanation this requires, however, de-
pends, as we have said, upon the circumstances of the
particular case.  *Id.,* at 356–357.  In some cases, it may be
sufficient for purposes of appellate review that the judge
simply relied upon the record, while making clear that he
or she has considered the parties' arguments and taken
account of the §3553(a) factors, among others.  But in
other cases, more explanation may be necessary (depend-
ing, perhaps, upon the legal arguments raised at sentenc-
ing, see *id.,* at 357).  That may be the case even when
there is little evidence in the record affirmatively showing
that the sentencing judge failed to consider the §3553(a)
factors.  If the court of appeals considers an explanation
inadequate in a particular case, it can send the case back
to the district court for a more complete explanation.  Cf.
*Molina-Martinez* v. *United States*, 578 U. S. ___, ___ (2016)
(slip op., at 15) ("[A]ppellate courts retain broad discretion
in determining whether a remand for resentencing is
necessary").

## B

Petitioner argues that the judge should have explained
more here because there is, or should be, some kind of
presumption that the judge will choose a point within the
new lower Guidelines range that is "proportional" to the
point previously chosen in the older higher Guidelines
range.  We are not aware of any law or any convincing
reason, however, suggesting that this is so.

As a technical matter, determining just what "proportionality" means in this context would often prove difficult when the sentence is somewhere in the middle of the Guidelines range. The Sentencing Table calculates punishments according to a logarithmic scale. Take petitioner's original and amended Guidelines ranges, for example. The original range was 135 to 168 months, a difference of 33 months. The amended range, by comparison, is 108 to 135 months, a difference of 27 months. And viewed logarithmically, what may seem the middle of a new lower range is not necessarily proportionate to what may seem the middle of the old higher range. Nothing in the Guidelines, or elsewhere, encourages arguments about such matters among lawyers or judges who are not experts in advanced mathematics.

More importantly, the Guidelines ranges reflect to some degree what many, perhaps most, judges believed in the pre-Guidelines era was a proper sentence based upon the criminal behavior at issue and the characteristics of the offender. Thus, a judge's choice among points on a range will often simply reflect the judge's belief that the chosen sentence is the "right" sentence (or as close as possible to the "right" sentence) based on various factors, including those found in §3553(a). Insofar as that is so, it is unsurprising that changing the applicable range may lead a judge to choose a nonproportional point on the new range. We see nothing that favors the one or the other. So, as is true of most Guidelines sentences, the judge need not provide a lengthy explanation if the "context and the record" make clear that the judge had "a reasoned basis" for reducing the defendant's sentence. *Rita, supra,* at 356, 359.

### C

Turning to the facts of this case, we find that the District Court's explanation satisfies the standard we used in

*Rita* and *Gall*, assuming it applies to sentence modifica-
tions. In *Rita*, as we earlier said, we upheld as lawful a
sentencing judge's explanation that stated simply that the
Guidelines sentence imposed was "'appropriate.'" 551
U. S., at 358. We noted that, in respect to the brevity or
length of the reasons the judge gives for imposing a par-
ticular Guidelines sentence, the "law leaves much" to "the
judge's own professional judgment." *Id.,* at 356. We
pointed out that the sentencing judge in that case had "set
forth enough to satisfy the appellate court that he ha[d]
considered the parties' arguments and ha[d] a reasoned
basis for exercising his own legal decisionmaking author-
ity." *Ibid.* The same is true here.

At petitioner's original sentencing, he sought a variance
from the Guidelines range (135 to 168 months) on the
ground that his history and family circumstances war-
ranted a lower sentence. The judge denied his request. In
doing so, the judge noted that he had "consulted the sen-
tencing factors of 18 U. S. C. 3553(a)(1)." He explained
that the "reason the guideline sentence is high in this
case, even the low end of 135 months, is because of the
[drug] quantity." He pointed out that petitioner had "dis-
tributed 1.7 kilograms of actual methamphetamine," a
"significant quantity." And he said that "one of the other
reasons that the penalty is severe in this case is because of
methamphetamine." He elaborated this latter point by
stating that he had "been doing this a long time, and from
what [he] gather[ed] and what [he had] seen, metham-
phetamine, it destroys individual lives, it destroys fami-
lies, it can destroy communities." App. 25.

This record was before the judge when he considered
petitioner's request for a sentence modification. He was
the same judge who had sentenced petitioner originally.
Petitioner asked the judge to reduce his sentence to 108
months, the bottom of the new range, stressing various
educational courses he had taken in prison. The Govern-

ment pointed to his having also broken a moderately
serious rule while in prison. The judge certified (on a
form) that he had "considered" petitioner's "motion" and
had "tak[en] into account" the relevant Guidelines policy
statements and the §3553(a) factors. *Id.*, at 106–107
(under seal). He then reduced the sentence to 114 months.
The record as a whole strongly suggests that the judge
originally believed that, given petitioner's conduct, 135
months was an appropriately high sentence. So it is un-
surprising that the judge considered a sentence somewhat
higher than the bottom of the reduced range to be appro-
priate. As in *Rita*, there was not much else for the judge
to say.

The dissent would have us ignore the record from the
initial sentencing and consider only what the judge said
when modifying petitioner's sentence. See *post,* at 4-5
(opinion of KENNEDY, J.). But, as we have made clear
before, a sentence modification is "not a plenary resentenc-
ing proceeding." *Dillon*, 560 U. S., at 826. We therefore
need not turn a blind eye to what the judge said at peti-
tioner's initial sentencing. The dissent suggests the
judge's failure to grant petitioner a proportional reduction
"limits the relevance of the initial sentencing proceeding."
*Post,* at 5. To the contrary, the record of the initial sen-
tencing sheds light on why the court picked a point slightly
above the bottom of the reduced Guidelines range when
it modified petitioner's sentence. Our decision is not (as
the dissent claims) based on mere "speculation." *Post,* at
7. Rather, we simply find the record as a whole satisfies
us that the judge "considered the parties' arguments and
ha[d] a reasoned basis for exercising his own legal deci-
sionmaking authority." *Rita*, *supra*, at 356.

This is not to say that a disproportionate sentence re-
duction *never* may require a more detailed explanation. It
could be that, under different facts and a different record,
the district court's use of a barebones form order in re-

sponse to a motion like petitioner's would be inadequate. As we said above, the courts of appeals are well suited to request a more detailed explanation when necessary. See *supra,* at 6. The dissent asserts that appellate courts would not need to remand for further explanation if district courts provided an additional "short statement or check[ed] additional boxes" on the form order. *Post,* at 8. That may be so, and nothing in this decision prevents judges from saying more when, in their professional judgment, saying more is appropriate. Providing a more detailed statement of reasons often serves "a salutary purpose" separate and apart from facilitating appellate review. *Rita*, 551 U. S., at 357. But our task here is to decide the case before us. And given the simplicity of *this* case, the judge's awareness of the arguments, his consideration of the relevant sentencing factors, and the intuitive reason why he picked a sentence above the very bottom of the new range, the judge's explanation (minimal as it was) fell within the scope of the lawful professional judgment that the law confers upon the sentencing judge. See *Id.* at 356.

The Court of Appeals concluded the same. Its judgment is therefore affirmed.

*It is so ordered.*

JUSTICE GORSUCH took no part in the consideration or decision of this case.

# SUPREME COURT OF THE UNITED STATES

───────────

No. 17–5639

───────────

## ADAUCTO CHAVEZ-MEZA, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE TENTH CIRCUIT

[June 18, 2018]

JUSTICE KENNEDY, with whom JUSTICE SOTOMAYOR and JUSTICE KAGAN join, dissenting.

When the District Court reduced petitioner Adaucto Chavez-Meza's sentence, it entered its order on a terse "AO–247" form. An example of this form is attached as an Appendix, *infra.* On the form order, the District Court checked a box next to preprinted language stating that it had "considered" Chavez-Meza's motion for a reduced sentence and that it had "tak[en] into account the policy statement set forth at USSG §1B1.10 and the sentencing factors set forth in 18 U. S. C. §3553(a), to the extent that they are applicable." App. 106–107 (under seal). The District Court checked another box indicating that Chavez-Meza's motion was granted, and the court stated that it was reducing his sentence to 114 months. *Ibid.* But the District Court did not explain why it chose that particular sentence or why it had not sentenced Chavez-Meza to the bottom of his Guidelines range, as it had done at his original sentencing. Under these circumstances, in my view the District Court's order was insufficient to allow for meaningful appellate review, a conclusion that requires this respectful dissent.

My disagreement with the majority is based on a serious problem—the difficulty for prisoners and appellate courts in ascertaining a district court's reasons for imposing a

sentence when the court fails to state those reasons on the record; yet, in the end, my disagreement turns on a small difference, for a remedy is simple and easily attained.

Just a slight expansion of the AO–247 form would answer the concerns expressed in this dissent in most cases, and likely in the instant one. If the form were expanded to include just a few more categories covering the factors most often bearing on a trial court's sentencing determination, the objections petitioner raises likely would be met. The statute would be satisfied; district judges would have a helpful form that might well reduce the time for consideration of cases—and even if not would help ensure the full consideration which tends to result in uniformity and fairness; the Courts of Appeals, from the outset, would have far more assistance in determining whether appeals have merit; and this in turn would yield judicial efficiencies that the sentencing system must have to be effective and that Courts of Appeals must have to ensure that the relevant statute can be administered and applied in an efficient, fair, and uniform way. The Court today, however, gives its full approval to a conclusory order. Its resulting holding is detrimental to the judicial system and to prisoners alike.

The Sentencing Reform Act of 1984 authorizes a district court to reduce a prisoner's sentence when he "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U. S. C. §3582(c)(2). Congress specified that district courts may reduce a defendant's sentence only "after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Ibid.*

In *United States* v. *Taylor*, 487 U. S. 326, 336 (1988), this Court addressed a statutory scheme that, like §3582(c)(2), required district courts to consider specific

statutory factors when they exercised their discretion. The Court held that "[w]here, as here, Congress has declared that a decision will be governed by consideration of particular factors, a district court must carefully consider those factors as applied to the particular case and, whatever its decision, clearly articulate their effect in order to permit meaningful appellate review." *Id.*, at 336–337.

Here, the form order fails to provide sufficient information either to give adequate and efficient instruction to the trial court or to permit meaningful appellate review. The form order discloses no basis for determining why the District Court did not sentence Chavez-Meza to the bottom of his new Guidelines range, as it had when it imposed his original sentence.

The Court points out that there is no presumption in favor of a proportional reduction when a judge reduces a prisoner's sentence pursuant to §3582(c)(2). *Ante*, at 6–7. That is true, as far as it goes. The issue here, however, is not whether district courts must grant proportional reductions; rather, the issue is what explanation should be required to permit meaningful review of a trial court's resentencing order.

The amount of necessary explanation might be different when a district court grants a proportional reduction—for example, when it sentences a defendant to the top or the bottom of his Guidelines range for both the initial and reduced sentence. In that circumstance, in most instances, an appellate court properly can infer that the district court's reasons were the same as those it gave when it imposed the initial sentence. See Brief for National Association of Criminal Defense Lawyers et al. as *Amici Curiae* 6–11 (explaining that district courts typically grant proportional reductions and that the Sentencing Commission often assumes they will do so). Less explanation is necessary, not because proportional reductions are favored as a legal matter but because the initial sentencing proceeding

provides a record from which an appellate court can make prompt and reliable inferences as to the reasons that informed the trial court's decision to resentence a defendant to the same relative point on his amended Guidelines range. Contrary to the Court's suggestion, furthermore, one need not have an advanced degree in mathematics, much less a calculator, to draw this reasonable inference. District courts, as a matter of routine, regularly grant proportional reductions; and it seems unlikely that they conduct intricate logarithmic computations before doing so.

In contrast to a proportional reduction in a prisoner's sentence, a nonproportional reduction suggests that the district court's reasons for choosing a particular sentence might be different from those it gave when it imposed the sentence in the first instance. Accordingly, a more specific explanation—but by no means an elaborate one—is necessary for an appellate court to determine why the district court chose a new point on the revised Guidelines range.

The Court's analogy to *Rita* v. *United States*, 551 U. S. 338, 356 (2007), fails as well. See *ante*, at 7–9. In *Rita*, the District Court imposed the defendant's sentence at a hearing. The record made clear that "the sentencing judge listened to each argument," "considered the supporting evidence," and then determined that a 33-month sentence was "appropriate." 551 U. S., at 357–358. But here there was no hearing when the District Court reduced Chavez-Meza's sentence in light of the amended Guidelines. The District Court's reasoning must be surmised from its terse, largely uninformative order. At Chavez-Meza's initial sentencing there was a hearing similar to the one in *Rita*. But the fact that the District Court did not grant Chavez-Meza a proportional reduction when it later reconsidered his sentence limits the relevance of the initial sentencing proceeding.

The District Court may well have had a legitimate

reason for reducing Chavez-Meza's sentence to 114 months instead of 108 months. And even a brief explanation stating that reason likely would have sufficed, for district courts need not write at length each time they rule upon a §3582(c)(2) motion.

The Court is quite correct to point out that a trial judge "need only 'set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority.'" *Ante*, at 3 (quoting *Rita*, *supra*, at 356). It is likely that even a checkbox form would suffice in most cases, provided the form lists enough of the common reasons so that an appellate court, in most cases, can easily ascertain why the district court chose a particular sentence. Here, for example, the District Court simply could have added a sentence or two to the AO–247 form's "Additional Comments" box. Or, perhaps preferably, trial courts could use an expanded version of the AO–247 form that allows judges to indicate, even by checking a box, the reason or reasons for choosing a particular sentence.

In this case, however, the District Court's reasons remain a mystery. The Court today speculates that the District Court sentenced Chavez-Meza to 114 months because he distributed a large quantity of methamphetamine. *Ante,* at 8. For its part, the Court of Appeals speculated that the reason might have been "an incident of misconduct while in prison." See 854 F. 3d 655, 660 (CA10 2017). But there is no basis for these assumptions in the District Court's order. The sort of guesswork the Court relies upon in today's decision is insufficient to provide meaningful appellate review of a district court's exercise of its discretion under §3582(c)(2). See *Taylor*, 487 U. S., at 342–343.

According to the Court of Appeals, the relevant provisions of the Sentencing Reform Act must be read to allow a trial court not to give or state any reasons at all for a

resentencing order. 854 F. 3d, at 658. This was error. The Court of Appeals reached its conclusion by comparing the provisions that relate to original sentencing—§3553(c)—with the provisions that pertain to the resentencing process—§3582(c)(2). It reasoned that, because the former has an express requirement to state reasons while the latter does not, the statutory structure eliminates any requirement for reasons upon resentencing. The Court of Appeals' analysis, however, ignores the scope of the statutory text in §3553(c). That section pertains to a procedure that is a full-scale adversary proceeding, where the defendant and counsel are present. As part of that procedure, the statute states: "The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence." §3553(c).

The statute does not require a full-scale adversary proceeding when resentencing is being considered after a Guidelines reduction. But it is incorrect to conclude that the absence of all those requirements forecloses the necessity to make a record that allows an appellate court to exercise meaningful review of the reasons for the resentencing order. This conclusion follows from this Court's decision in *Taylor*, holding that courts must "clearly articulate" their reasoning "in order to permit meaningful appellate review," even without any specific statutory command. 487 U. S., at 336–337. So the fact that Congress adopted a detailed explanatory requirement in another part of the statute does not displace *Taylor*'s background rule that district courts must provide enough reasoning for appellate courts to review their decisions when they exercise discretion under a statute like §3582(c)(2).

The Court quite correctly rejects the Government's invitation to adopt the Court of Appeals' interpretation. See *ante*, at 5–6. The Court's ensuing analysis, however, is, in my respectful view, still incorrect. On the one hand,

the Court holds that appellate courts may determine on a case-by-case basis whether a form order like the one here provides enough explanation. See *ante*, at 6, 9–10. Thus, any prisoner can appeal and argue that the order was insufficient in his case. On the other hand, the Court does not impose any serious requirement that a district court state its reasons on the front end—that is, before the appeal, when the district court rules on the §3582(c)(2) motion. Thus, in cases like this one, appeals will often be based on speculation that requires the prisoner, the Government, and the Court of Appeals to hypothesize the potential reasons for the prisoner's sentence when a reduction is weighed and considered.

This is an unwise allocation of judicial resources. District courts, to state the obvious, are best positioned to explain their reasons for imposing a particular sentence. Under the majority's opinion, however, appellate courts will often lack clarity as to a district court's reasoning and will be forced to either speculate (as the Court does today) based on their own view of the record, or remand the case for further explanation, likely followed by another appeal. What could have taken a sentence or two at the front end now can, and likely will, produce dozens of pages of briefs, bench memoranda, orders, and judicial opinions as the case makes its way first to the appellate court, then back down to the trial court and perhaps back to the appellate court again.

A better, more efficient rule would require trial courts in cases like this one to provide their reasons in their initial decisions either by giving a short statement or checking additional boxes. We must be conscious of the fact that retroactive amendments to the Guidelines can result in thousands of resentencings. That is all the more reason the inefficiencies resulting from today's decision ought to be avoided. And given the uncertainty that will ensue from today's decision, district courts would be wise to say

more than the court said in this case, even in the absence of a holding requiring it to do so on the specific facts at issue here.

For these reasons, I respectfully dissent.

Appendix to opinion of KENNEDY, J.

# APPENDIX

AO 247 (Rev. 11/11)   Order Regarding Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(2)      Page 1 of 2 (Page 2 Not for Public Disclosure)

## UNITED STATES DISTRICT COURT
### for the

| United States of America | ) |
| v. | ) |
|  | ) Case No: _____ |
|  | ) USM No: _____ |
| Date of Original Judgment: _____ | ) |
| Date of Previous Amended Judgment: _____ | ) _____ |
| *(Use Date of Last Amended Judgment if Any)* | *Defendant's Attorney* |

### ORDER REGARDING MOTION FOR SENTENCE REDUCTION
### PURSUANT TO 18 U.S.C. § 3582(c)(2)

Upon motion of ☐ the defendant ☐ the Director of the Bureau of Prisons ☐ the court under 18 U.S.C. § 3582(c)(2) for a reduction in the term of imprisonment imposed based on a guideline sentencing range that has subsequently been lowered and made retroactive by the United States Sentencing Commission pursuant to 28 U.S.C. § 994(u), and having considered such motion, and taking into account the policy statement set forth at USSG §1B1.10 and the sentencing factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable,

**IT IS ORDERED** that the motion is:
☐ DENIED.  ☐ GRANTED and the defendant's previously imposed sentence of imprisonment *(as reflected in the last judgment issued)* of _____ months **is reduced to** _____ .

*(Complete Parts I and II of Page 2 when motion is granted)*

Except as otherwise provided, all provisions of the judgment dated _____ shall remain in effect.
**IT IS SO ORDERED.**

Order Date: _____                    _____
                                                *Judge's signature*

Effective Date: _____                _____
         *(if different from order date)*              *Printed name and title*

AO 247 (Rev. 11/11)   Order Regarding Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(2)      Page 2 of 2 (Page 2 Not for Public Disclosure)

**This page contains information that should not be filed in court unless under seal.**
*(Not for Public Disclosure)*

DEFENDANT: _____
CASE NUMBER: _____
DISTRICT: _____

**I. COURT DETERMINATION OF GUIDELINE RANGE** *(Prior to Any Departures)*

Previous Total Offense Level: _____     Amended Total Offense Level: _____
Criminal History Category: _____     Criminal History Category: _____
Previous Guideline Range: _____ to _____ months   Amended Guideline Range: _____ to _____ months

**II.  SENTENCE RELATIVE TO THE AMENDED GUIDELINE RANGE**

☐ The reduced sentence is within the amended guideline range.
☐ The previous term of imprisonment imposed was less than the guideline range applicable to the defendant at the time of sentencing as a result of a substantial assistance departure or Rule 35 reduction, and the reduced sentence is comparably less than the amended guideline range.
☐ The reduced sentence is above the amended guideline range.

**III.  ADDITIONAL COMMENTS**