NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1911
_____

UNITED STATES OF AMERICA;

v.

ANDREW CARR,

Appellant
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action No. 2-15-cr-00455-001)
District Judge: Honorable Eduardo C. Robreno
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 24, 2019

Before: McKEE, AMBRO, and ROTH, Circuit Judges

(Opinion filed: January 30, 2020)
_____

OPINION*
_____

AMBRO, Circuit Judge

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Andy Carr is a skilled martial artist and a member of the Warlocks motorcycle gang. He is also a methamphetamine addict who relapsed after decades of sobriety. He eventually fell in with Philadelphia-area dealer Andre Trombetta. Months later the Government charged him with conspiracy to distribute methamphetamine, in violation of 21 U.S.C. § 846, and with two counts of possession with intent to distribute, in violation of 21 U.S.C. § 841.

At trial, the Government presented testimony from several witnesses. The gist of the Government's case was this: As a martial artist who often wore his Warlocks jacket, Carr cut an imposing figure, so Trombetta enlisted him as his "enforcer." Carr would accompany Trombetta on business, and, in exchange for collecting debts from Trombetta's customers, Carr received free meth. (There was also testimony that Trombetta gave Carr a puppy.) Carr testified in his own defense and denied the charges. Even though Trombetta openly referred to him as the "muscle" on their almost-daily outings together, Carr maintained that it was all a joke; he was lousy at the job and no one took him seriously.

The jury returned a mixed verdict. It convicted Carr of conspiracy, acquitted him on one of the counts for possession with intent to distribute, and hung on the other count (which the Government then dismissed). At sentencing, the District Court rejected a downward adjustment for Carr's minor role in the conspiracy, and it added an "obstruction-of-justice" enhancement based on what it found to be Carr's perjury on the witness stand.

On appeal, Carr challenges (1) the sufficiency of the evidence against him, (2) the District Court's "mitigating role" sentencing ruling, and (3) the "obstruction-of-justice" enhancement.

***1. Sufficiency of Evidence.*** To prove a conspiracy under 21 U.S.C. § 846, the Government must show the conspirators had a shared purpose and agreed to work toward a common goal. *United States v. Iglesias*, 535 F.3d 150, 156 (3d Cir. 2008). Here, Carr concedes that a conspiracy existed around Trombetta. He even concedes he bought meth from Trombetta, accompanied the kingpin on business, and accepted free meth from him whenever offered. Carr simply insists the evidence did not show he was part of Trombetta's conspiracy.

There was ample evidence from which the jury could have concluded otherwise. To begin, Trombetta testified that he hired Carr as his debt-collector "because he was a scary character." At one time Trombetta said of Carr, "Andy's going to bust some heads if they ain't got the money . . . . Andy's going to do what he was being paid to do." What is more, he testified that Carr agreed to the job of enforcer. No surprise, then, that Trombetta was open with others about Carr's role, including telling a customer that Carr was "collecting his debts now and he was doing a good job at it." As Trombetta told the jury, "All the people that I had for bad debts, I would give them to Andy to go see."

With customer Pat Sordi, Carr resorted to violent threats. After Sordi brandished a gun during a meeting, Carr told him that "if you ever pull a gun on me, pull a gun out again around me, man, I'll break your face." He also left Sordi a hostile voicemail that demonstrates his understanding of the conspiracy's common purpose and goal.

3

Aside from debt collection, there was testimony that Carr accompanied Trombetta to resupply meth from Trombetta's wholesaler Romeo D'Aurizio. And Carr was caught on a wiretap suggesting he was selling meth himself. (To repeat, however, he was not convicted of possession with intent to distribute.)

Carr's overall defense is that Trombetta's statements should be taken seriously, not literally. Carr acknowledges hearing Trombetta tell Sordi he was Trombetta's "muscle," but claims he "almost laughed" at the notion. In other words, the talk of Carr being an enforcer was just bluster; no one actually bought it. He was a lousy collector and never earned his promised 20% commission on debts he collected. In short, he was simply an amusing diversion for a dealer looking for new ways to collect from his customers.

But Carr's participation in the conspiracy hinges on his agreement to join, not on his skill as a debt-collector. Even a bumbling "enforcer" can join a criminal conspiracy. And while the jury didn't have to conclude that Carr joined Trombetta's conspiracy, there was ample basis for it to do so. We affirm the District Court on this issue.

*2. "Mitigating Role" Adjustment.* To determine whether to apply a "mitigating role" sentencing reduction, a court considers several non-exhaustive factors, including the defendant's understanding of the scope of the crime, his participation in planning it, his decision-making authority, and the benefits he derived from the crime. *See* U.S.S.C. § 3B1.2 cmt. n.3(C). Even a defendant who plays an "indispensable role" could see a reduced sentence if he "is substantially less culpable than the average participant in the criminal activity." *Id.*

4

Here, the District Court denied a "mitigating role" adjustment based on the testimony of Trombetta and Sordi that Carr "acted as a collector and enforcer for the drug conspiracy." Although the Court did not address each non-exhaustive factor separately, its review easily passed muster. "At bottom, the sentencing judge need only 'set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority.'" *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1964 (2018) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)). That was done here.

Finally, the Court did not commit clear error in its analysis of the facts. To be sure, Carr did not have planning authority and arguably was a lousy enforcer. But he was an imposing presence, constantly at Trombetta's side for a period of months, and was rewarded with free meth. It is hardly clear error to find that his role was not minor.

**3. Obstruction-of-Justice Enhancement.** U.S.S.G. § 3C1.1 provides for a sentencing enhancement if the defendant obstructs "the administration of justice." This rule specifically applies to perjury by the defendant on the witness stand. *See* U.S.S.G. § 3C1.1 cmt. n.4(B). Of course, "not every accused who testifies at trial and is convicted will incur an enhanced sentence under § 3C1.1 for committing perjury." *United States v. Dunnigan*, 507 U.S. 87, 95 (1993). But "a defendant's right to testify does not include a right to commit perjury." *Id.* at 96; *see also United States v. Fiorelli*, 133 F.3d 218, 221 (3d Cir. 1998) (noting that a "denial of guilt under oath" may "constitute[] perjury" for purposes of the enhancement).

A defendant commits perjury for purposes of the enhancement "if [he] gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Dunnigan*, 507 U.S. at 94. To apply the enhancement, then, a sentencing court must "make independent findings necessary to establish a willful impediment to or obstruction of justice." *Id.* at 95. "[I]t is preferable for a district court to address each element of the alleged perjury in a separate and clear finding." *Id.* But remand is not appropriate just because the court "failed to engage in a ritualistic exercise and state the obvious for the record." *Fiorelli*, 133 F.3d at 121.

The District Court "credit[ed] the testimony of Trombetta and Sordi regarding [i] [Carr's] role as a collector, [ii] the threats [Carr] made to Sordi, and [iii] [Carr's] distributions of drugs." Carr specifically denied each point on the witness stand, but the Court found that his testimony was false and concerned a material matter. As such, Carr had obstructed justice by committing perjury.

This was not clear error. Trombetta and Sordi both testified that Carr was Trombetta's collector and enforcer, which Carr flatly denied. Trombetta and Sordi also testified that Carr threatened Sordi, which Carr also denied. And Trombetta testified that Carr sold his own meth. Carr denied this as well, and even though he was not convicted of it at trial, the District Court did not clearly err in finding his testimony was false.

\* \* \* \* \*

In this context, we affirm.

6