NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0411n.06

No. 21-1281

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Sep 01, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| JEREMY SHERROD, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

**BEFORE:  SUTTON, Chief Judge; McKEAGUE and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.**  Federal inmate Jeremy Sherrod appeals the denial of his motion seeking compassionate release in light of his medical conditions and history, and his risk of becoming severely ill if exposed to COVID-19.  Sherrod argues that the district court abused its discretion by determining that there were no extraordinary and compelling reasons justifying his release based solely on the Bureau of Prisons' (BOP) data reflecting low COVID-19 numbers at his facility on the particular day his motion was decided.  We disagree with Sherrod's characterization of the district court's reasoning and AFFIRM.

## I.

On June 27, 2017, a grand jury charged Sherrod with one count of Hobbs Act robbery; one count of using, carrying, or brandishing a firearm during and in relation to the Hobbs Act robbery; one count of being a felon in possession of a firearm; and one count of conspiracy to commit a Hobbs Act robbery.  Sherrod pleaded guilty to all four counts, and the district court imposed a below-Guidelines sentence of 120 months' imprisonment.

Sherrod is currently serving his sentence at FCI McKean, a medium-security facility in Lewis Run, Pennsylvania, that currently houses approximately 847 inmates. On January 5, 2021, Sherrod filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Sherrod argued that his medical conditions of obesity and prediabetes, as well as his status as a former smoker and a person born with pneumonia, created extraordinary and compelling circumstances warranting release by increasing his risk of complications or death from COVID-19. Sherrod argued that "prison exacerbate[d] [his] risk[]" given the BOP's report that FCI McKean had twenty-six known positive cases of COVID-19 as of January 4, 2021. R. 139, PID 685 (citing Bureau of Prisons, "COVID-19", www.bop.gov/coronavirus/). Sherrod also argued that the 18 U.S.C. § 3553(a) sentencing factors supported his release.

The government opposed Sherrod's motion. Although it "agree[d] that Sherrod's circumstances—including his heightened risk for severe complications from C[OVID]-19 based on his obesity—qualify as 'extraordinary and compelling reasons' for release," R. 145, PID 741, it argued that his particularized concerns about contracting COVID-19 were speculative. Specifically, the government argued that regardless of Sherrod's obesity, BOP had implemented a number of precautions at FCI McKean—such as vaccine distribution, targeted detainee release, and isolation procedures—that mitigated Sherrod's risk from COVID-19. The government also noted that FCI McKean had only sixteen active cases of COVID-19.[1] Finally, the government argued that even if extraordinary and compelling circumstances were present, the § 3553(a) factors counselled against Sherrod's release.

---

[1] Presumably this information was current as of the time of the government's response, though the brief does not date the data or cite its source.

In his reply brief, filed January 26, 2021, Sherrod disputed the government's assessment of his COVID-19 risk at FCI McKean. He cited the BOP COVID-19 website, which, as of January 25, 2021, was reporting 159 positive cases among inmates at that facility. The district court later gave Sherrod permission to supplement the record further. On March 2, 2021, Sherrod accordingly filed an affidavit, dated January 28, 2021, discussing his experience with the conditions of confinement at FCI McKean.

The district court denied Sherrod's motion on March 8, 2021, on the basis that there were no extraordinary and compelling circumstances warranting compassionate release. The court rejected Sherrod's argument that his alleged prediabetes, smoking history, or infantile pneumonia increased his medical risk from COVID-19. However, the court agreed that Sherrod's BMI of 49.2 was "well in excess of the [Centers for Disease Control (CDC)'s] obesity threshold of 30, which the government concedes is a recognized serious medical risk factor [for susceptibility to COVID-19]." R. 154, PID 926. The district court then concluded that there were no extraordinary and compelling circumstances for the following reasons:

> Recent reports indicate that the probability of infection at McKean, although once quite high, now is very low, with only three active cases among inmates, and no active infections among staff. The defendant has two recognized medical risk factors, but, in the absence of any active coronavirus cases among inmates at his facility, he has not sufficiently established that he presently faces an extraordinary and compelling medical risk that warrants release.[2]

> But for his obesity, the defendant, a relatively young inmate, has no other tangible serious risk factors, and he faces at present an apparently remote probability of infection. "'[O]n similar facts this Court has declined to order the release of otherwise healthy . . . inmates with obesity as their only cognizable risk factor, absent other indications of serious medical risk,' particularly where they were confined at institutions with few or no active coronavirus cases." *United States v.*

---

[2] It is unclear where the references to *two* recognized medical risks and the *absence* of active cases among inmates come from. Elsewhere the district court identifies only one recognized risk—obesity—and states that there were three active cases at the facility.

*Shumaker*, No. 18-20286, 2021 WL 289653, at \*4 (E.D. Mich. Jan. 28, 2021) (collecting cases). "There are no distinguishing facts here that warrant a different result, particularly in light of the relatively low risk of infection." *Ibid.*

*Id.* at 927-28.

The district court did not address the § 3553(a) sentencing factors. Sherrod filed a timely appeal.

## II.

The compassionate-release statute allows a district court to reduce an inmate's sentence if it (1) finds that "extraordinary and compelling reasons warrant such a reduction"; (2) finds that a reduction is "consistent with applicable policy statements issued by the Sentencing Commission"; and (3) "consider[s] the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A)(i). Because the second requirement is not at issue where the defendant, rather than the BOP, brings the motion for release, district courts may deny compassionate-release motions where either the first or third requirement is lacking and do not need to address the other. *See United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

The statute does not define extraordinary and compelling reasons. It instead "delegat[es] that task to the Sentencing Commission." *Id.* at 518. However, we have recently clarified that district courts "are not bound by [the Sentencing Commission's determinations] in defining extraordinary and compelling reasons for release." *Id.* at 521. Although district courts may "permissively consider [the Sentencing Commission's guidance] as part of [their] discretionary inquiry," *United States v. Tomes*, 990 F.3d 500, 503 n.1 (6th Cir. 2021), they enjoy broad—though not unlimited—"discretion to define 'extraordinary and compelling' on their own initiative." *Elias*, 984 F.3d at 519-20.

We review the denial of a compassionate-release motion for abuse of discretion. *United States v. Jones*, 980 F.3d 1108, 1112 (6th Cir. 2020). "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.* at 1112 (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)). "District courts are required to provide the reasons for their decisions and must 'set forth enough to satisfy the appellate court that [they] had considered the parties' arguments and had a reasoned basis for exercising [their] own legal decisionmaking authority.'" *United States v. Rafidi*, 842 F. App'x 1017, 1021 (6th Cir. 2021) (quoting *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1964 (2018)). "[W]hen reviewing such a discretionary decision, we consider the entire record." *Id.* (citing *United States v. Ruffin*, 978 F.3d 1000, 1008–09 (6th Cir. 2020)).

**A.**

Sherrod's sole argument on appeal is that it was error for the district court to recognize that his obesity was a serious risk factor and then deny the existence of extraordinary and compelling circumstances solely "on th[e] single dispositive factor [of] a risk determination based on the minimal number of cases at McKean on one specific day," particularly when FCI McKean's COVID numbers had "fluctuated greatly." Appellant's Br. at 13. Sherrod characterizes the court's reasoning as such because

> the District Court recognized that Sherrod had a Body Mass Index (BMI) "of 49.2, well in excess of the obesity threshold of 30, which the government concedes is a recognized serious medical risk factor." (Order, R. 154, Page ID#926) . . . . [Therefore,] when it declined to find an extraordinary and compelling reason for release under §[]3582(c)(1)(A), it did so essentially for one dispositive factor: it did not find that Sherrod faced a risk of infection at his prison . . . at that specific moment in time of the issuance of the Order.

*Id.* at 11-12.

We disagree with this characterization. After extensively discussing Sherrod's four proffered medical conditions and concluding that Sherrod's high BMI was the only condition both supported by the record and recognized as a CDC risk factor, the court turned to the number of active coronavirus cases at FCI McKean: "Recent reports indicate that the probability of infection at McKean, although once quite high, now is very low, with only three active cases among inmates, and no active infections among staff." R. 154, PID 927. But this is not all the district court said. The court's ultimate decision relied on the combination of Sherrod's medical circumstances, his age, and the low number of current cases at his facility: "But for his obesity, the defendant, a relatively young inmate, has no other tangible serious risk factors, and he faces at present an apparently remote probability of infection. On similar facts this Court has declined to order . . . release." *Id.* at 928 (internal citations omitted). Although the opinion's early obesity language perhaps falsely foreshadows an ultimate finding of a medical condition sufficient to support release, the court did not in fact find that Sherrod's obesity provided adequate reason to grant relief. Rather, it simply acknowledged that he had established his obesity as a fact, that his condition was recognized by the CDC as "a serious medical risk factor," and that the government had conceded as much. *Id.* at 926. The court then considered the risk posed by Sherrod's obesity together with his other risk factors, as well as the conditions at the prison, and concluded that on balance these factors did not constitute extraordinary and compelling circumstances supporting release.

Consistent with our determination that district courts have "full discretion" to define extraordinary and compelling circumstances, *Jones*, 980 F.3d at 1109, we have held in similar cases that district courts do not abuse their discretion in looking to the totality-of-the-circumstances in deciding whether extraordinary and compelling circumstances exist. *See United States v.*

*Mackety*, 854 F. App'x 36, 38 (6th Cir. 2021) (no abuse of discretion where the district court considered the underlying medical conditions in conjunction with the BOP-reported case numbers); *Elias*, 984 F.3d at 520-21 (same); *United States v. Montero*, 842 F. App'x 1007, 1009 (6th Cir. 2021) (no abuse of discretion where the district court considered the underlying medical conditions, the defendant's risk compared to those similarly situated, and the defendant's prior symptoms after previously contracting COVID-19). Regardless whether we agree with the district court's assessment of the significance of either Sherrod's obesity or a one-day BOP snapshot of positive cases, consideration of these factors is not inappropriate, and it is clear that the district court did so in a manner consistent with our precedent. *Mackety*, 854 F. App'x at 38. Accordingly, we cannot say that the court failed to demonstrate a "reasoned basis for exercising [its] own legal decisionmaking authority."[3] *Rafidi*, 842 F. App'x at 1021 (quoting *Chavez-Meza*, 138 S. Ct. at 1966).

## III.

Because the district court did not abuse its discretion in denying Sherrod's motion for compassionate release, we AFFIRM.

---

[3] Had the district court done what Sherrod argues it did and denied his motion for the sole reason that a single-day FCI McKean COVID report happened to be low, this would be a more difficult case. In the month of January 2021—when Sherrod filed his compassionate release motion—the pandemic arguably raged at FCI McKean, with 159 reported positive cases as of January 25. But by the time the district court decided Sherrod's motion in March, the tide had ebbed to a reported three positive cases among inmates. And, as the government tells us in its appellee brief, Sherrod still managed to ultimately contract COVID-19 after his compassionate-release denial. Thus, we note as a logical matter that a BOP-reported COVID snapshot on any given day may not be a reliable standalone measure of a particular detainee's contraction risk.