NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0267n.06

Case No. 22-1503

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Jun 09, 2023<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| SHANNON DAWN HAWKINS, | ) | MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

Before: WHITE, THAPAR, and NALBANDIAN, Circuit Judges.

THAPAR, Circuit Judge. After escaping federal custody and evading local police during a dangerous high-speed chase, Shannon Dawn Hawkins was arrested and charged with both federal and state crimes. Hawkins pled guilty to federal escape, and the district court sentenced Hawkins to 18 months' imprisonment to run consecutively to her undischarged state and federal sentences. On appeal, Hawkins challenges her consecutive sentence as procedurally unreasonable. Because the court properly exercised its discretion, we affirm.

I.

After serving most of her 16-month sentence for aggravated identify theft in prison, the Federal Bureau of Prisons transferred Hawkins to the Cherry Street Services reentry center ("Cherry Health") in Grand Rapids, Michigan. But with less than three weeks left to serve, Hawkins took advantage of the trust that Cherry Health placed in her and absconded. Specifically,

Hawkins obtained permission to take some items to her car, which was parked across the street from the facility. Instead of returning, she got in her car and drove away.

Days later, an Ionia County police officer observed Hawkins driving well above the posted speed limit with one broken headlight. So he attempted a traffic stop. But instead of pulling over, Hawkins fled.

The officer called for backup. During the chase, Hawkins drove as fast as 90 miles per hour while evading officers across 3 separate counties. After deploying stop sticks on 4 separate occasions and puncturing multiple tires, the officers finally stopped her. During her arrest, Hawkins appeared to be paranoid. She complained of government plots to kidnap and surveil her. Hawkins was also quite inebriated. Her car was littered with 9 empty beer cans, she had trouble speaking and walking, and she had a blood-alcohol level of 0.172—more than double the legal limit.

Months later, Michigan charged Hawkins with two offenses: (1) felony fleeing and eluding a police officer, and (2) misdemeanor driving while impaired. To protect the community from Hawkins's dangerous behavior—indeed, she had committed a similar crime years before—the Michigan court sentenced Hawkins to 22–60 months' imprisonment for the first offense concurrent with a 93-day sentence for the second offense.

A federal grand jury then indicted Hawkins for escaping from federal custody at Cherry Health in violation of 18 U.S.C. § 751(a). In a written plea agreement, Hawkins and the United States made two key stipulations. First, the parties agreed that U.S.S.G § 5G1.3(a)'s consecutive-sentence provision applied to Hawkins's felony-escape sentence and the three weeks remaining on

her sentence for aggravated identity theft.[1]  Second, the parties stipulated that "U.S.S.G. § 5G1.3(b) and/or (d)"—including Application Note 4(D)—applied to Hawkins's felony-escape conviction and the undischarged term of her state convictions.  R. 21, Pg. ID 40

U.S.S.G. § 5G1.3(b) directs that a district court impose a concurrent sentence if it determines that "a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction."  Section 5G1.3(d) grants district courts discretion "[i]n any other case involving an undischarged term of imprisonment" to structure the sentences "concurrently, partially concurrently, or consecutively . . . to achieve a reasonable punishment."  U.S.S.G. § 5G1.3(d).  Finally, Application Note 4(D) says that courts may exercise their discretion under subsection (d) when "faced with a complex case" involving multiple undischarged terms of imprisonment "that seemingly call for the application of different rules."  *Id.* cmt. n.4(D).  As the plea agreement acknowledges, Hawkins was subject to "more than one undischarged term of imprisonment."  R. 21, Pg. ID 40 (paraphrasing Application Note 4(D)).

At sentencing, the court enhanced Hawkins's sentence by two levels for recklessly "creat[ing] a substantial risk of death or serious bodily injury to [the] police officer[s] who [were] trying . . . to stop her vehicle."  R. 39, Pg. ID 168.  In light of that enhancement, the court initially calculated Hawkins's Guidelines range to be 30–37 months' imprisonment.  But after finding that Hawkins's conduct supporting the enhancement overlapped with her conduct punished by her state sentences, the court concluded that it was "more appropriate" to sentence Hawkins without the two-level enhancement.  *Id.* at 196.  So the court varied downward to a new range of 24–30 months' imprisonment.

---

[1] Under U.S.S.G § 5G1.3(a), "[i]f the instant offense was committed while the defendant was serving a term of imprisonment . . ., the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment."

After considering various mitigating factors, the court then varied downward again, ultimately imposing an 18-month consecutive sentence. While the court acknowledged that Hawkins's state offenses were in some sense relevant to her federal-escape conviction, it found that a consecutive rather than concurrent sentence was necessary to respect each government's interests in punishing Hawkins for fleeing arrest from local officers and escaping from federal custody at Cherry Health. The court also determined that a consecutive sentence would be "the better way to effectuate all of the 3553 factors" and U.S.S.G. § 5G1.3. *Id.* Hawkins objected and timely appealed.

## II.

Hawkins argues that her consecutive sentence was procedurally unreasonable under U.S.S.G. § 5G1.3(b). Specifically, she claims that the court offered "no explanation" for varying from "5G1.3(b) despite finding [that] the state term of imprisonment was relevant conduct." Appellant Br. 22.

We review the district court's decision to impose a consecutive sentence under Sentencing Guideline § 5G1.3 for abuse of discretion. *United States v. Campbell*, 309 F.3d 928, 930 (6th Cir. 2002). Hawkins can prove procedural error by showing that the court failed to calculate the proper Guidelines range, treat the Guidelines as advisory rather than binding, consider the § 3553(a) factors, or adequately explain the chosen sentence. *Gall v. United States*, 552 U.S. 38, 51 (2007). "When deciding to impose consecutive sentences, . . . a district court must indicate on the record its rationale, either expressly or by reference to a discussion of relevant considerations contained elsewhere." *United States v. Cochrane*, 702 F.3d 334, 346 (6th Cir. 2012), *abrogated on other grounds by Rodriguez v. United States*, 575 U.S. 348 (2015). But so long as a judge sufficiently considers the parties' arguments and fashions a reasonable sentence, "[t]he appropriateness of

brevity or length, conciseness or detail" of the decision is largely left to the "judge's own professional judgment." *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1964 (2018) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)). "At bottom, the sentencing judge need only set forth enough [detail] to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis" for his decision. *Id.* (citation omitted)

Here, the district court sufficiently explained its reasons for imposing a consecutive sentence. The court considered § 5G1.3's provisions but found that, in the context of this case, "the better way to effectuate all of the 3553 factors" was to focus on Hawkins's hypothetical guideline range without the obstruction enhancement and impose the resulting sentence to run consecutively. R. 39, Pg. ID 196. This allowed the court to respect the state and federal governments' respective interests in punishing Hawkins.

Beginning with the Michigan crimes, the court noted the "very significant" harms posed by Hawkins's eluding-police and impaired-driving offenses. R. 39, Pg. ID 195. She could've killed officers and Michigan residents while driving inebriated at dangerously high speeds, and it took substantial state resources—including four sets of stop sticks—to finally stop Hawkins's car. *See also id.* at 168 ("When the car hits the sticks, there is a risk . . . that the car is going to go out of control and [harm] the officers."). Moreover, though Michigan had previously convicted Hawkins for engaging in similar criminal conduct, that hadn't stopped her from endangering her community again. So to preserve Michigan's ability to prevent recidivism and future harm to its officers and residents, the court imposed a consecutive sentence.

Turning to the escape offense, the court then noted the federal government's separate interest in deterring detainees from escaping custody. Thus, according to the court, imposing a

concurrent sentence would improperly minimize the federal government's interest in preventing other inmates from escaping federal custody.

Second, the court found that imposing a consecutive sentence, while removing the enhancement that double counted the state criminal conduct, would be "the better way to effectuate all of the 3553 factors." *Id.* at 196. Consistent with 18 U.S.C. § 3553(a), and for the reasons just discussed, the court found that a consecutive sentence would best reflect the seriousness of the offense, deter future criminal conduct, protect the public from further crimes, and satisfy the Guideline's' policy statements.

For these reasons, the court "adequately explain[ed] the chosen sentence to allow for meaningful appellate review." *Chavez-Meza*, 138 S. Ct. at 1965 (quoting *Gall*, 552 U.S. at 50).

We affirm.