In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 23-2313

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ADAM TYRALE WILLIAMS, JR.,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:01-cr-00067-JTM-APR-1 — **James T. Moody**, *Judge.*

———————————

ARGUED FEBRUARY 7, 2024 — DECIDED FEBRUARY 20, 2024

———————————

Before EASTERBROOK, WOOD, and JACKSON-AKIWUMI,
*Circuit Judges.*

WOOD, *Circuit Judge*. This case is the latest in a long-running effort by Adam Williams to obtain reductions in his sentences for crack-cocaine offenses. It relates to his 2019 application, filed pursuant to the First Step Act of 2018, Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222. The district court denied that motion, but we vacated its order because the court failed to calculate the amended statutory sentencing ranges

applicable to Williams's convictions. Williams amplified his
motion on remand, highlighting significant changes to his rec-
ord and conditions of confinement that post-dated the order
we vacated. Nonetheless, the district court denied Williams's
request just one day after receiving the updated motion, in an
order materially identical to the first one. Applying the total-
ity-of-circumstances test the Supreme Court called for in
*Chavez-Meza v. United States*, 138 S. Ct. 1959, 1965–66 (2018),
we conclude that this was a case that required "a more com-
plete explanation," *id.* (citing *Molina-Martinez v. United States*,
136 S. Ct. 1338, 1348 (2016)). We therefore vacate the judgment
and remand again for further proceedings.

# I

This is far from our first encounter with Williams's sen-
tence: we reviewed it on direct appeal and then four times on
post-conviction review. We thus recount only the essential
facts. In 2001 Williams was convicted of (1) conspiring to dis-
tribute more than 50 grams of crack cocaine, 21 U.S.C. § 846
(2000), (2) distributing more than 50 grams of crack, *id.*
§ 841(b)(1)(A)(iii), and (3) distributing more than five grams
of crack, *id.* § 841(b)(1)(B)(iii). As the then-mandatory sentenc-
ing guidelines required, the district court (acting through
Judge Lozano) imposed three concurrent sentences: life im-
prisonment for Counts 1 and 2 and the statutory maximum
40-year term for Count 3. We dismissed Williams's direct ap-
peal. See *United States v. Williams*, 51 F. App'x 589 (7th Cir.
2002) (*Williams I*).

Over the years, Williams has tried repeatedly to secure re-
ductions in those sentences. Judge Lozano presided over
three of Williams's post-conviction motions for a reduced sen-
tence based on retroactive amendments to the guidelines. See

18 U.S.C. § 3582(c)(2). The judge dismissed the first two, concluding that Williams continued to pose a threat to public safety, see 18 U.S.C. § 3553(a)(2)(C), and so the original sentence was still appropriate. We affirmed each of those judgments. See *United States v. Williams*, 380 F. App'x 527 (7th Cir. 2010) (*Williams II*); *United States v. Williams*, No. 12-1339, 2012 WL 5951511 (7th Cir. Nov. 29, 2012) (*Williams III*). When Williams filed his third motion, the guidelines range for Counts 1 and 2 (by then just a recommendation, see generally *United States v. Booker*, 543 U.S. 220 (2005)) was 235 to 293 months' imprisonment, rather than life. In a 2015 ruling on the motion, Judge Lozano noted that "the cumulative effect of *three* changes to the guidelines has transformed a once-guideline sentence into a sentence that represents a significant departure," and so he granted a "small reduction" to 360 months' imprisonment on all counts. The ruling noted that Williams's age at the time of the offense, lack of criminal history, and self-improvement efforts while incarcerated favored the reduction, but it concluded that an above-range sentence was nonetheless warranted because of "the seriousness of the offense." We affirmed. *United States v. Williams*, 628 F. App'x 449 (7th Cir. 2016) (*Williams IV*).

On October 7, 2019, Williams filed a fourth motion for a reduced sentence, but this time he relied on section 404(b) of the recently enacted First Step Act. That legislation made retroactive the reduced statutory penalties for crack offenses established by the Fair Sentencing Act of 2010, Pub. L. No. 111-120, §§ 1-2, 124 Stat. 2372, 2372. As applied to Williams, the First Step Act yields statutory ranges of 60 to 480 months' imprisonment for Counts 1 and 2, 21 U.S.C. § 8419(b)(1)(B)(iii), and a maximum of 240 months' imprisonment for Count 3, *id.* § 8419(b)(1)(C). To support his request for a sentence

reduction, Williams explained that he has been a "model inmate" (with just one minor sanction "for being in an unauthorized area") and that "he has completed numerous educational courses" while serving his sentence.

Williams's motion landed in Judge Moody's chambers, to whom the case had been reassigned upon Judge Lozano's passing. Stating that he was giving the facts a "fresh look," Judge Moody explained that he saw "the situation the same way as Judge Lozano did in 2015" when he ruled on Williams's third motion. Judge Moody acknowledged Williams's youth at the time of the offense, lack of prior contact with the criminal justice system, and commendable behavior and self-improvement efforts while incarcerated. On the other hand, he noted that Williams "was involved in a large-scale drug conspiracy, possessed a firearm, attempted to help cover up a senseless murder in another case, and twice committed perjury." Judge Moody concluded that, given the nature and "reprehensibility" of those crimes, Williams continued to pose a threat to public safety. He thus refused to lower Williams's 360-month sentence.

Williams appealed. He argued that Judge Moody's explanation was insufficient because, rather than addressing his First Step Act motion, it "relied excessively" on Judge Lozano's rationale in his third post-conviction ruling. We found it unnecessary to engage with that argument, because we identified "a more substantial error [in] Judge Moody's analysis." *United States v. Williams*, 32 F.4th 653, 655 (7th Cir. 2022) (*Williams V*). Nowhere did the order calculate the new statutory ranges for Williams's three convictions, as the First Step Act requires; worse, it misstated the statutory maximum for Count 3 (indicating that it was 360 months, when it was

actually 240 months). *Id.* Although Williams had forfeited this challenge, we concluded that the error was plain because it deprived Williams "of the benefit of any anchoring effect that the new statutory ranges could have had on Judge Moody's decision" and it "affect[ed] the fairness, integrity, and public reputation of the proceeding." *Id.* We thus vacated the order and remanded for reconsideration.

The appeal now before us concerns what happened after April 28, 2022, when our decision in *Williams V* issued. On May 2, 2022, Judge Moody ordered the U.S. Probation Department to submit a revised addendum to Williams's Presentence Report. The revised addendum, which was submitted on May 4, 2022, correctly stated Williams's modified statutory penalties and his current guidelines range of 235 to 293 months' imprisonment. Nothing else happened until approximately a year later, when on June 15, 2023, Williams renewed his First Step Act motion. The renewed motion requested the guidelines maximums of 293 months for Counts 1 and 2 and the statutory maximum of 240 months for Count 3; if granted, those adjustments would allow him immediately to begin the supervised-release portion of his sentence. Williams reiterated the arguments from his initial First Step Act motion, but he also argued that developments post-dating Judge Moody's now-vacated order supported a reduced sentence. Specifically, Wiliams explained that on March 22, 2023, the Bureau of Prisons had transferred him to the Phoenix Residential Reentry Management field office and placed him on home confinement and electronic monitoring in his brother's home in Phoenix, Arizona. Williams also noted that he has enrolled in an eleven-month vocational program to become a barber, and he is expected to graduate in April 2024.

Just one day after receiving Williams's latest submission, Judge Moody denied it, through an order nearly identical to the one we vacated in *Williams V*. The only differences in the two orders are the addition of a paragraph stating the properly calculated statutory and guidelines ranges and trivial rephrasings of a few sentences. Williams has appealed, again arguing that Judge Moody did not adequately explain his decision.

**II**

"[T]he First Step Act 'leaves much to the [sentencing] judge's own professional judgment,'" *Concepcion v. United States*, 597 U.S. 481, 501 (2022) (quoting *Chavez-Meza*, 138 S. Ct. at 1961 (cleaned up)), and we therefore review a denial of a First Step Act motion only for an abuse of discretion, *United States v. Shaw*, 957 F.3d 734, 743 (7th Cir. 2020). Notwithstanding the broad discretion that the statute affords, however, "when deciding a First Step Act motion, district courts bear the standard obligation to explain their decisions and demonstrate that they considered the parties' arguments." *Concepcion*, 597 U.S at 500–01. There is no hard-and-fast rule for determining whether a reasoned explanation is adequate. Instead, "the adequacy of a court's reasons for imposing a particular sentence depends on 'the circumstances of the particular case.'" *Shaw*, 957 F.3d at 740 (quoting *Chavez-Meza*, 138 S. Ct. at 1965).

The circumstances of this case warranted a more detailed explanation than Judge Moody provided. In *Williams V*, we expressed some uncertainty about the adequacy of the explanation in the first order, but we did not develop those concerns because "a *more* substantial error mar[red] Judge Moody's analysis." 32 F.4th at 655 (emphasis added).

Although the most recent order addresses the procedural deficiencies that led us to vacate the first order, it does not leave us "assured" that the court "'relied upon the record' and 'considered the parties' arguments.'" *Shaw*, 957 F.3d at 740 (quoting *Chavez-Meza*, 138 S. Ct. at 1965).

We note first that there is much to Williams's argument that Judge Moody's latest order relies too heavily on Judge Lozano's reasoning from the 2015 ruling on the third post-conviction motion—an order that relied on a record that was materially different from the one we now have. We have observed that, owing to the "lengthy statutory penalties attached to crack offenses, a judge presiding over a request for a sentence reduction under the [First Step] Act [might] not be the same judge who imposed a defendant's original sentence." *Id.* at 741. When that is so, there is a risk that the earlier judge's reasoning "could hamper [the new] judge's consideration of a defendant's arguments, because the [latter] judge [might] be heavily reliant on a previous explanation and record that was not created with the current statutory framework in mind." *Id.* (quotation omitted).

That risk is present here. Judge Lozano issued his post-conviction ruling based on retroactive guidelines amendments, not the First Step Act. Congress enacted the Act more than three years after Judge Lozano's ruling, in an effort to "reflect updated views about the seriousness of [Williams's] offense or criminal history." *Id.* at 742. Yet Judge Moody's order incorporates Judge Lozano's rationale wholesale and refers repeatedly to it, without explaining how an explanation issued in 2015 and based on an outdated record and a different legal landscape automatically applies to a 2023 motion. The order offers no reason, for example, for why Williams still

poses a threat to public safety even though he has continued to maintain near-perfect behavior while serving what Congress now views as an appropriate term of imprisonment for his offense and is successfully living on home confinement. The order mentions only "a fact not lost on Judge Lozano"—namely, Williams's "serious offenses"—and states that Judge Moody "sees the situation the same way as Judge Lozano did in 2015." Absent at least some explanation showing why Judge Lozano's ruling maps onto a motion filed nearly a decade later under new legislation, we have no way to know whether Judge Moody considered how the relevant statutory framework, and the policy judgments that it reflects, applies to Williams's current situation.

These facts are a far cry from the situation the Supreme Court faced in *Chavez-Meza*, where a retroactive guidelines amendment reduced the defendant's recommended range from 135 to 168 months, down to 108 to 135 months. 138 S. Ct. at 1964. Two years after he was sentenced to 135 months (the previous guidelines minimum), Chavez-Meza requested a reduction down to the low end of the revised range, 108 months. The judge reduced his sentence, but only down to 114 months. By way of explanation for this straightforward decision, the judge simply checked a box certifying that he had considered the petitioner's motion and taken the relevant law into account. That was enough, the Supreme Court held, for the case at hand. But the Court also included this caution in its opinion:

> In some cases, it may be sufficient for purposes
> of appellate review that the judge simply relied
> upon the record, while making clear that he or
> she has considered the parties' arguments and

> taken account of the § 3553(a) factors, among others. But in other cases, more explanation may be necessary (depending, perhaps, upon the legal arguments raised at sentencing).

138 S. Ct. at 1965 (citation omitted). For the latter cases, the Court confirmed, the court of appeals "can send the case back to the district court for a more complete explanation." *Id.* And lest there be any temptation to over-read *Chavez-Meza* as holding that a simple box-check is always enough, the Court reiterated in *Concepcion* that "when deciding a First Step Act motion, district courts bear the standard obligation to explain their decisions and demonstrate that they considered the parties' arguments." 597 U.S. at 500–01. In that connection, the Court cited *Chavez-Meza* simply as a decision allowing judges to exercise their professional judgment about how detailed an explanation is called for in each individual case. See *id.* at 501.

Measured against those standards and taking into account the fact that we are dealing here with a substantially enhanced record, not a simple, discretionary choice about which point within an established guidelines range the judge thinks is proper, we conclude that the district court's revised order fell short. The court did not so much as nod at Williams's new arguments, which are based on significant developments post-dating the now-vacated order. *Concepcion* holds that those intervening changes of law and fact may be considered. *Id.* at 500. Williams specifically noted in his renewed motion that his good behavior while incarcerated led the Bureau of Prisons to place him on home confinement and electronic monitoring in his brother's house, and that he has enrolled in vocational school to become a barber. This new information shows that Williams's conditions of confinement have

materially changed; his arguments to that effect were not frivolous points that the district court was free to disregard. While the court is entitled, as a matter of discretion, to find Williams's arguments unpersuasive, on this record it was required to articulate at least "a brief statement of reasons" to explain that assessment. *Concepcion*, 597 U.S. at 501. The order's "silence" on Williams's changed circumstances "leaves us without assurance that the district court *considered* [Williams's] arguments, even if it didn't ultimately find them persuasive." *Shaw*, 957 F.3d at 742.

The government insists that the language of the order is broad enough to encompass all of Williams's arguments, old and new. In support of its position, the government relies primarily upon *Chavez-Meza*. But, as we already have explained, both the facts and the issue in *Chavez-Meza* were uncomplicated, and so that case lent itself to the use of a simple check in a box to signal the district court's reasoning. But nothing in *Chavez-Meza* says this will always suffice, as we know from the Court's later decision in *Concepcion*.

Judge Moody's order, entered just a day after Williams renewed his motion and well before the government filed any response, is nearly identical to the one that we vacated in *Williams V*. None of the revisions give any indication that Judge Moody considered Williams's new arguments, and so, as to those arguments, the order is effectively silent. *Cf. United States v. Fowowe*, 1 F.4th 522, 527 (7th Cir. 2021) (quoting *United States v. Corner*, 967 F.3d 662, 666 (7th Cir. 2020) (*per curiam*)). Even if we were to view the order as offering a "barebones" explanation, that would amount to a non-exercise of discretion, which "is itself an abuse of discretion." *Id.* (quoting *Corner*, 967 F.3d at 666).

### III

It is regrettable that yet another round is necessary in the district court, but it is. We trust that the district court will expeditiously complete the job, in light of the fact that Williams will be eligible for supervised release at the end of 2025. We VACATE the judgment of the district court and REMAND for further proceedings consistent with this opinion.