RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0034p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

ARMANI DAVIS-MALONE,

*Defendant-Appellant.*

> No. 24-1099

─────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:22-cr-20362-1—Gershwin A. Drain, District Judge.

Argued:  October 30, 2024

Decided and Filed:  February 14, 2025

Before:  STRANCH, THAPAR, and MURPHY, Circuit Judges.

─────────────

## COUNSEL

**ARGUED:**  Benton C. Martin, OFFICE OF THE FEDERAL COMMUNITY DEFENDER, Detroit, Michigan, for Appellant.  Erin L. Ramamurthy, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.  **ON BRIEF:**  Benton C. Martin, OFFICE OF THE FEDERAL COMMUNITY DEFENDER, Detroit, Michigan, for Appellant.  Erin L. Ramamurthy, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

─────────────

## OPINION

─────────────

MURPHY, Circuit Judge.  This case requires us to consider whether the district court lawfully used a standard form order with only a few sentences of analysis to deny Armani Davis-Malone's request for a sentence reduction.  The court originally imposed a 60-month sentence that fell ten months below Davis-Malone's guidelines range.  The Sentencing Commission then

amended the guidelines in a way that would have reduced his range to 57 to 71 months if the change had applied at his sentencing.  Because the Commission made this change retroactive, Davis-Malone sought a reduced sentence under 18 U.S.C. § 3582(c)(2).  But the district court denied relief because its 60-month sentence remained near the bottom of his amended range.

Davis-Malone now argues that the district court legally erred because he interprets its form order as finding him ineligible for a sentence reduction.  And even if it did not commit this error, Davis-Malone adds, the court abused its discretion by failing to explain its denial in more detail.  Yet we read the court's order to have found Davis-Malone eligible and to have denied him relief as a matter of its discretion.  And we conclude the court did not abuse its discretion by relying on a form order given this case's simple facts and the record showing that the court considered the parties' evidence and arguments.  We thus affirm.

I

While on probation for credit-card fraud, Davis-Malone started selling prescription pills from the parking lot of a pizza restaurant in Detroit, Michigan.  An informant brought Davis-Malone's drug dealing to the attention of law enforcement.  In April 2022, the authorities coordinated two controlled buys at the pizza restaurant.  Each time, Davis-Malone sold oxycodone to an undercover agent.

Two months later, federal agents obtained a search warrant for Davis-Malone's car.  Inside the car, they found a handgun that he had made fully automatic and loaded with 23 rounds.  The agents also uncovered over 100 oxycodone pills and 200 grams of marijuana hidden in a secret compartment.

The government chose to charge Davis-Malone with a single count: possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1).  Davis-Malone pleaded guilty.

At sentencing, the court calculated his guidelines range as 70 to 87 months' imprisonment.  The court decided on this range in part because Davis-Malone had committed his felon-in-possession offense while still serving the sentence for his credit-card fraud.  That fact gave him two more criminal history points and bumped him up to criminal history category V.

Ultimately, however, the court chose to vary below this guidelines range based on the sentencing factors in 18 U.S.C. § 3553(a).  It imposed a 60-month sentence.

Months after the district court sentenced Davis-Malone, the Sentencing Commission passed Amendment 821 to the Sentencing Guidelines.  *See* U.S. Sentencing Comm'n, Guidelines Manual App. C., Amdt. 821 (Part A) (Nov. 2023) (USSG).  This amendment changed the way that district courts should calculate the criminal history score of defendants (like Davis-Malone) who commit their offense while still serving a sentence for a prior one.  *See id.*  The Commission also made this change retroactive.  That choice allowed already-sentenced defendants (again, like Davis-Malone) to rely on the change to seek a reduced sentence.  *See* U.S.S.G. § 1B1.10(a), (d).

At the district court's request, a probation officer investigated whether Amendment 821 would benefit Davis-Malone.  The probation officer found that Davis-Malone's criminal history category would have fallen from V to IV if the Commission had passed the amendment before his sentencing.  That change would have lowered Davis-Malone's guidelines range to 57 to 71 months.  The probation officer added that Davis-Malone had obtained his high-school equivalency degree while in prison and worked in the recycling department for UNICOR, a federal prison program.  He also had not committed any prison infractions.

After the probation officer submitted this report, Davis-Malone's counsel and the government filed a joint stipulation agreeing with the report's conclusions.  The parties recommended that the court cut three months off Davis-Malone's sentence by imposing a 57-month term at the bottom of his new guidelines range.  Davis-Malone separately filed a pro se motion seeking a reduced sentence.  He attached his prison education records to this pro se motion.

Despite the parties' stipulation, the district court refused to reduce Davis-Malone's sentence.  The court denied relief in a form order to which it added three sentences of analysis: "The defendant's new guideline range is 57 to 71 months.  The defendant recieved [sic] a sentence of 60 months custody.  As the defendant's original sentence is at the lower end of the new guideline range, a sentence reduction is DENIED."  Order, R.42, PageID 314.  Davis-Malone timely appealed the district court's refusal to lower his sentence.

II

Federal law generally prohibits district courts from amending a sentence that they have previously imposed. *See* 18 U.S.C. § 3582(c); *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010). But Congress has authorized a few exceptions to this prohibition. *See* 18 U.S.C. § 3582(c)(1)–(2); *Dillon v. United States*, 560 U.S. 817, 824 (2010). As relevant here, a district court may modify the sentence of "a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o)" if the modified sentence would comport both with the applicable sentencing "factors" in 18 U.S.C. § 3553(a) and with the "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2).

The Supreme Court has read § 3582(c)(2)'s language to adopt a two-step approach. *See Dillon*, 560 U.S. at 826. At step one, a district court must determine whether the statute renders a defendant *eligible* for a sentence reduction. *See id.* at 826–27. To be eligible, a defendant must satisfy a few criteria. The district court must have sentenced the defendant "based on a sentencing range" that the Commission has since reduced. 18 U.S.C. § 3582(c)(2). And a shorter sentence must be "consistent with" the Commission's policy statement on this topic: U.S.S.G. § 1B1.10. 18 U.S.C. § 3582(c)(2). Section 1B1.10, in turn, imposes other eligibility requirements that district courts must respect. *See Dillon*, 560 U.S. at 819. The Commission must have made the general amendment on which the defendant relies retroactive (as it has with Amendment 821). *See* U.S.S.G. § 1B1.10(a), (d). And this amendment's application to the specific defendant must "have the effect of lowering the defendant's applicable guideline range." *Id.* § 1B1.10(a)(2)(B).

At step two, a district court must determine whether the defendant warrants a shorter sentence as a matter of the court's residual *discretion*. *See Dillon*, 560 U.S. at 827. Section 3553(a)'s sentencing factors continue to channel this discretion. *See* 18 U.S.C. § 3582(c)(2). So too does the defendant's post-sentencing prison conduct. *See Concepcion v. United States*, 597 U.S. 481, 492–94 (2022); *see also United States v. Smith*, 958 F.3d 494, 498 (6th Cir. 2020).

Here, Davis-Malone says the district court committed a legal error at step one and a discretionary error at step two. We will address each claim in turn.

*Did the District Court Wrongly Find Davis-Malone Legally Ineligible for Relief?* Davis-Malone first argues that the district court mistakenly held at step one that he was ineligible for a sentence reduction. He relies on the following statement in the court's order: "As the defendant's original sentence is at the lower end of the new guideline range, a sentence reduction is DENIED." Order, R.42, PageID 314. According to Davis-Malone, this statement shows that the court believed the law did not permit it to reduce his sentence because the sentence fell within the amended guidelines range after applying Amendment 821's changes.

Reviewing this claim of legal error de novo, *see Curry*, 606 F.3d at 327, we conclude that Davis-Malone misinterprets the statement on which he relies. For three reasons, we read that statement as identifying a reason why the court was denying Davis-Malone relief as a discretionary matter—not as concluding that he was statutorily ineligible for this relief.

*First*, nothing in 18 U.S.C. § 3582(c)(2) or U.S.S.G. § 1B1.10 could have led the district court to believe that the law bars defendants from seeking a reduced sentence if their original sentence fell within their amended guidelines range. Rather, the law makes the amended range relevant in two other ways. Section 1B1.10 bars a district court from imposing a reduced sentence if an amendment "does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10(a)(2)(B). And a district court may not reduce a sentence below the "minimum" of that amended range. *Id.* § 1B1.10(b)(2)(A). Davis-Malone's request for a reduced sentence satisfies both criteria. Amendment 821 lowered his guidelines range from 70 to 87 months to 57 to 71 months. So the district court could lawfully reduce his sentence from 60 months to 57 months (the minimum of his amended range). Davis-Malone, by contrast, does not offer any ground on which the district court might have held that it could not reduce an original sentence that fell within an amended range. He thus would have us believe that the court adopted an unsupported and implausible view of the law. That seems unlikely—to say the least.

*Second*, nothing in the factual record could have led the district court to mistakenly conclude that the law barred Davis-Malone from seeking a reduced sentence. To the contrary,

all relevant parties recognized his eligibility.  The probation officer explained that Amendment 821 reduced Davis-Malone's guidelines range, so she highlighted factors for the court to consider when exercising its residual discretion.  Next, defense counsel and the government "stipulate[d]" that the court had the authority to shorten Davis-Malone's sentence to 57 months.  Stip., R.40, PageID 303.  They then recommended that the court exercise its discretion to reduce Davis-Malone's sentence to this term "[b]ased upon" the § 3553(a) factors.  *Id.*  So Davis-Malone would treat the district court as disregarding not just the unambiguous law but also the parties' legal positions.  That fact further confirms his misreading of the court's order.

*Third*, the district court's order—when read as a whole—shows that it denied relief at the discretionary step (step two).  The court first said it had considered § 1B1.10 and the applicable § 3553(a) factors.  It next noted that Davis-Malone had an amended guidelines range of 57 to 71 months.  This range rendered him eligible for a sentence reduction under § 1B1.10.  But the court stuck to its 60-month sentence because that sentence fell at "the lower end" of the amended range.  Order, R.42, PageID 314.  The court's reasoning shows that it recognized Davis-Malone's eligibility and denied him relief because its original sentence continued to represent the proper punishment.  *Cf. Curry*, 606 F.3d at 330.  Indeed, why would the court highlight that Davis-Malone's original sentence landed *at the bottom* of his amended range if it thought the statute rendered him categorically ineligible for relief even if the sentence had landed at the top of that range?  Davis-Malone has no answer.  In sum, he must read the court's order in an unreasonable way to justify his claim that it committed a legal error.

That fact distinguishes the cases on which Davis-Malone relies: *United States v. Kamper*, 748 F.3d 728 (6th Cir. 2014), and *United States v. Vandewege*, 561 F.3d 608 (6th Cir. 2009).  In those cases, the record (when "read as a whole") showed that the district court committed a legal error because it found that it lacked the power to refuse to follow a guideline based on a policy disagreement with the guideline.  *Kamper*, 748 F.3d at 742–43; *see Vandewege*, 561 F.3d at 609–10.  Here, by contrast, the record shows that the district court took a proper view of the law.

*Did the District Court Adequately Explain Its Discretionary Denial of Relief?*  In the alternative, Davis-Malone argues that the district court did not say enough when denying relief at step two.  Yet just as district courts have discretion over whether to grant a motion for a reduced

sentence under § 3582(c)(2), they also have discretion over how they convey their decisions on these motions. *See Chavez-Meza v. United States*, 585 U.S. 109, 115–16 (2018); *United States v. Goodwin*, 87 F.4th 321, 327 (6th Cir. 2023). To be sure, the Supreme Court has assumed that the rules governing district courts at sentencing continue to apply at the sentence-modification stage. *See Chavez-Meza*, 585 U.S. at 115–16. So courts must "*consider* all 'nonfrivolous arguments'" in support of a request for a reduced sentence. *Goodwin*, 87 F.4th at 326 (quoting *Concepcion*, 597 U.S. at 501) (emphasis added); *United States v. Domenech*, 63 F.4th 1078, 1083 (6th Cir. 2023). And the record must show that the district court "reasoned through" these arguments when ruling on a motion. *Goodwin*, 87 F.4th at 327 (quoting *Concepcion*, 597 U.S. at 501).

But courts need not issue a written opinion engaging in a point-by-point rebuttal of every argument for every sentence-modification motion. *See Chavez-Meza*, 585 U.S. at 116; *Goodwin*, 87 F.4th at 327. Rather, they can rely on their "professional judgment" about the amount of information they need to include in an order. *Chavez-Meza*, 585 U.S. at 119. In fact, the Supreme Court has held that district courts may deny relief using a standard form in "conceptually simple" cases if "the record makes clear that [the district court] considered the evidence and arguments[.]" *Id.* at 113 (citation omitted); *see also United States v. Navarro*, 986 F.3d 668, 671–72 (6th Cir. 2021). That is especially true when a defendant's original sentence remains within the amended guidelines range even after accounting for the relevant amendment. *See Goodwin*, 87 F.4th at 328; *United States v. Bailey*, 27 F.4th 1210, 1214 (6th Cir. 2022). The presumption of reasonableness that applies to within-guidelines sentences continues to apply at the sentence-modification stage. *See Goodwin*, 87 F.4th at 329. And since a district court bears the primary responsibility to decide on the information to convey, we must review its decision in this regard under a deferential abuse-of-discretion standard. *See Bailey*, 27 F.4th at 1214.

Our decision in *United States v. Brim*, 661 F. App'x 879 (6th Cir. 2016), offers a good example of this framework. There, the district court gave a detailed analysis of the original sentence at the sentencing hearing and imposed a below-guidelines sentence of 144 months' imprisonment. *Id.* at 880, 883. A retroactive guidelines amendment then lowered the defendant's guidelines range to 140 to 175 months' imprisonment. *Id.* at 881. The government and defendant jointly recommended that the court grant the largest possible reduction to 140

months. *Id.* But the district court denied this request in a form order with little reasoning. *Id.* We upheld its decision. *See id.* at 882–83. Among other reasons, we highlighted that the defendant could receive, at most, a four-month reduction. *See id.* at 883. We added that the same court had presided over the defendant's sentencing and his sentence-modification request. *See id.* And because that court had thoroughly discussed the § 3553(a) factors at sentencing, we saw no need for the court to say much more at the sentence-modification stage. *See id.*

This case is similar to *Brim*. Here, as there, the district court had recently provided a detailed analysis regarding the original sentence at the sentencing hearing and imposed a below-guidelines sentence. Here, as there, the Commission later amended the guidelines in a way that put this sentence near the bottom of the amended guidelines range. Here, as there, the government and defendant jointly recommended that the court reduce the sentence to the bottom of the new range. And here, as there, the court refused to do so in a short form order. This case thus warrants the same result as *Brim*: the order sufficed to avoid an abuse-of-discretion label.

In particular, the order adequately explained the district court's rationale to allow for our meaningful review. *See Chavez-Meza*, 585 U.S. at 116. After acknowledging the § 3553(a) factors, the court found that its 60-month sentence (which was now "at the lower end" of the amended range) remained appropriate. Order, R.42, PageID 314. And the court could have granted, at most, only a three-month reduction. We do not see why the court needed to say more given that it had already discussed those § 3553(a) factors in depth at Davis-Malone's original sentencing when choosing the 60-month sentence.

Davis-Malone's responses all fall short. He first criticizes the district court for failing to mention his post-sentencing rehabilitation efforts, including his decision to obtain a high-school equivalency degree, his completion of prison classes, and his employment with the UNICOR program. But we see no basis to conclude that the district court did not *consider* these efforts (as it had to do). *See Concepcion*, 597 U.S. at 501. To the contrary, the probation officer's report discussed them when giving the court input for its decision. And while the court's order did not *expressly refer* to them, the court had the discretion to highlight only the main factors that drove its decision. *See id.*; *Goodwin*, 87 F.4th at 328–29. At Davis-Malone's original sentencing, moreover, the court required him to "upgrade [his] education" and "participate in vocational and

training programs" while he served his time.  Sent. Tr., R.36, PageID 287.  The court did so because it was "convinced" that Davis-Malone had the intelligence to "hold a job" and be a "productive" member of society.  *Id.*  So the court had already accounted for these post-sentencing efforts when finding its original term the right number.  *Cf. Chavez-Meza*, 585 U.S. at 118–19.

At oral argument, Davis-Malone's counsel nevertheless identified one reason why the court might have overlooked his rehabilitation efforts: those efforts were identified in detail in Davis-Malone's pro se motion, but the court checked the box on the form order noting that it was considering relief for Davis-Malone on its *own* motion (not *his* motion).  Yet the probation officer's report independently discussed the same rehabilitation efforts.  And Davis-Malone identifies nothing to suggest that the court might have missed that report too.

Davis-Malone next argues that the district court should have explained why it refused to follow the government's lead in agreeing to his request for a sentence reduction.  But district courts (not prosecutors) bear the responsibility to decide whether to reduce a sentence.  *See* 18 U.S.C. § 3582(c)(2).  Besides, Davis-Malone again cites nothing to suggest that the court failed to consider the agreement—all it was required to do.  *See Concepcion*, 597 U.S. at 501.  The court had the parties' joint stipulation before it at the time of its decision.

After making these factual arguments, Davis-Malone turns to caselaw.  He suggests that we have already held that district courts will "[i]n *most* circumstances" act improperly if they rely on form orders like the one that the court used here.  *Navarro*, 986 F.3d at 670 (quoting *United States v. Jones*, 980 F.3d 1098, 1114 (6th Cir. 2020)).  But *Navarro* later clarified that this quote from *Jones* amounted to nonbinding dicta.  *See id.* at 670–71.  And it went on to uphold the use of a form order in a related context.  *See id.* at 671–72.  *Navarro* thus supports our conclusion here.

Davis-Malone next invokes our decision in *Domenech*.  But that case also does not help him.  There, we reversed a district court because it misread the law to suggest that it need not even consider a defendant's arguments in support of a reduced sentence.  *See Domenech*, 63 F.4th at 1082–83.  The district court here did not make the same legal mistake.  Nothing in its

order implies that it failed to consider Davis-Malone's (or the government's) arguments justifying their joint stipulation in favor of a reduced sentence. *See Goodwin*, 87 F.4th at 328.

So Davis-Malone ends with an out-of-circuit decision: *United States v. Williams*, 93 F.4th 389 (7th Cir. 2024). But that factually complex case looks nothing like this one. Among many other differences, the district court had denied the defendant's motion for a reduced sentence even though his 360-month sentence was over five years above the top of his amended guidelines range. *See id.* at 390–91. We fail to see how this fact pattern says anything about the district court's decision to summarily stick with a sentence at the bottom of the amended range.

We affirm.