NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0229n.06

No. 24-3759

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
May 05, 2025
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| ALEXA M. LOGAN, | ) | OHIO |
| Defendant-Appellant. | ) | OPINION |

Before: MOORE, GIBBONS, and MURPHY, Circuit Judges.

MURPHY, J., delivered the opinion of the court in which GIBBONS, J., concurred. MOORE, J. (pp. 8–11), delivered a separate dissenting opinion.

MURPHY, Circuit Judge. Alexa Logan harassed several victims, including FBI agents, when trying to extort money from a man on the false ground that she was pregnant with his child. She pleaded guilty to cyberstalking and extortion offenses. The district court imposed a 46-month sentence. The Sentencing Commission then created a new guideline that reduced the offense level for qualifying defendants who have no criminal history points. Logan believed that this new guideline applied to her, so she sought a lower sentence. But the district court held that she could not seek a sentence reduction because she did not meet the guideline's requirements. And even if this guideline applied, the court also held that it would not have lowered her sentence as a discretionary matter. We affirm its denial of relief based only on the second of these conclusions.

I

On appeal, the parties rely almost exclusively on the facts that Logan's probation officer wrote in her presentence report. Because they do not dispute these facts, we will follow the same approach. *Cf. United States v. Cover*, 800 F.3d 275, 278 (6th Cir. 2015) (per curiam).

Logan met her first victim ("G.B.") on a dating site in 2018. According to G.B., the pair "had a single sexual encounter." Rep., R.86, PageID 306. In April 2019, Logan told G.B. that they had conceived a child and demanded $20,000 in child support. G.B. did not believe Logan. So he obtained counsel for an expected paternity suit and tried to facilitate a DNA test. Yet Logan did not show up for the test. And the lawsuit never came. Instead, Logan and someone pretending to be her lawyer repeatedly harassed G.B. with telephone calls, text messages, and emails. By June 2020, Logan also began to call and email G.B.'s business partners and family members claiming that G.B. owed her money. All told, some 200 harassing messages were sent from Logan's email address to the victims.

In August 2020, G.B. disclosed Logan's harassment to FBI agents in Akron, Ohio. After the agents interviewed the parties, they too began to receive harassing messages that "became more graphic and explicit in nature over time." *Id.*, PageID 307. The messages claimed that the agents had caused the "stillbirth death" of Logan's child. *Id.* Logan's significant other, Akil Joseph, also started to send threatening messages. For example, Joseph told an FBI agent that the agent did not "have enough" "blood" to spare in an email complaining about the FBI's investigation of Logan. *Id.* In another email, Joseph later suggested to FBI agents and G.B. that he would "bring the bodies and start stacking them in front of the Akron FBI" office. *Id.*, PageID 308. In still another email, he told G.B., an FBI agent, and others that "[t]he game you keep playing will cost some if not all of you your lives one day." *Id.*

The government eventually charged Logan and Joseph with four counts of cyberstalking, *see* 18 U.S.C. §§ 2261A(2)(B), 2261(b)(5), and one count of making interstate communications with the intent to extort money, *see id.* § 875(d). Logan pleaded guilty to all counts. The parties' plea agreement calculated her offense level as 21, which would lead to a guidelines range of 37 to 46 months' imprisonment because Logan had no criminal-history points. Yet the presentence report suggested that Logan had an offense level of 25, which would have instead produced a guidelines range of 57 to 71 months. At sentencing, the district court "accept[ed]" the parties' "recommendation" to use a range of 37 to 46 months. Sentencing Tr., R.112, PageID 471. It imposed a 46-month sentence. Logan did not appeal.

Several months after the district court sentenced Logan, the Sentencing Commission passed Amendment 821 to the Sentencing Guidelines. *See* U.S. Sentencing Comm'n, Guidelines Manual App. C., Amdt. 821 (Nov. 2023). This amendment created a new guideline that instructs district courts to decrease the offense level by two for defendants who do not have any criminal-history points and who satisfy several other conditions. *See* U.S.S.G. § 4C1.1(a). The Commission also made the amendment adding § 4C1.1(a) retroactive, which allowed already-sentenced defendants to seek reduced sentences based on it. *See id.* § 1B1.10(d).

Logan sought a reduced sentence under this new guideline because she did not have any criminal-history points before her current conviction. Yet a defendant qualifies for the guideline's two-level reduction only if "the defendant did not use violence or credible threats of violence in connection with the offense[.]" *Id.* § 4C1.1(a)(3). And the district court held that Logan's "conduct involved threats of harm to her victims." Statement, R.108, PageID 441. Even if Logan had qualified for the offense-level reduction, the court next explained that it still would not have lowered her sentence when considering the sentencing factors in 18 U.S.C. § 3553(a).

3

Logan asked the court to reconsider this decision. But it denied her motion on the same two grounds. She now appeals.

II

Congress has permitted district courts to modify already-imposed sentences in limited circumstances. *See* 18 U.S.C. § 3582(c); *United States v. Davis-Malone*, 128 F.4th 829, 831–32 (6th Cir. 2025). As relevant here, defendants may sometimes seek a reduced sentence when the Sentencing Commission amends a guideline. *See* 18 U.S.C. § 3582(c)(2). Under § 3582(c)(2), a district court may reduce a defendant's sentence if such an amendment has lowered the defendant's "sentencing range"—so long as a reduced sentence would comport with the sentencing factors in 18 U.S.C. § 3553(a) and with the Commission's policy statements. *Id.* § 3582(c)(2).

Defendants must establish two things to obtain a reduced sentence under § 3582(c)(2). *See Davis-Malone*, 128 F.4th at 832 (citing *Dillon v. United States*, 560 U.S. 817, 826 (2010)). First, they must prove their eligibility to seek a reduced sentence. *See id.* To be eligible, defendants must prove, among other things, that the relevant amendment would have reduced their guidelines range if it had applied to them at their original sentencing. 18 U.S.C. § 3582(c)(2); U.S.S.G. § 1B1.10(a)(2)(B). And a court may reduce the sentence only to the bottom of the amended range. *See* U.S.S.G. § 1B1.10(b)(2)(A). Second, defendants must show that a district court should reduce their sentence "as a matter of the court's residual *discretion*." *Davis-Malone*, 128 F.4th at 832. When exercising this discretion, a court may consider any applicable § 3553(a) factors as well as the defendant's post-sentencing conduct in prison. *See id.*

The district court in Logan's case refused to grant the reduced sentence for both reasons. To start, the court found that Logan was not even eligible for a reduced sentence because the relevant amendment—the creation of U.S.S.G. § 4C1.1(a)—would not have lowered her

guidelines range. This new guideline calls for a two-level reduction to an offense level if a defendant has no criminal history points and satisfies several other requirements. *See* U.S.S.G. § 4C1.1(a). The court found Logan ineligible because she could not meet one of the requirements: that she "did not use . . . credible threats of violence in connection with the offense[.]" *Id.* § 4C1.1(a)(3). Logan now challenges this conclusion on the ground that only Joseph threatened victims with violence. She claims that she sent none of the physically threatening emails and that § 4C1.1(a)(3) asks only whether the "defendant" (not a *codefendant*) used threats of violence. *Id.*

The government responds with two eligibility points of its own. It first suggests that the district court properly held Logan responsible for Joseph's threats. And regardless, the government suggests that Logan could not seek a reduced sentence because the amendment would not have lowered her guidelines range enough. It reads the district court's analysis at sentencing to adopt the presentence report's view that Logan's guidelines range was 57 to 71 months' imprisonment. The government reasons that the court *varied* below this range when it followed the parties' "recommendation" to use a range of 37 to 46 months. Sentencing Tr., R.112, PageID 471. If so, § 4C1.1(a)'s two-level reduction would have reduced Logan's offense level from 25 to 23, so her amended guidelines range would have become 46 to 57 months' imprisonment. Under this view, she could not have sought a sentence lower than her 46-month term because such a sentence would have fallen below the "minimum" of her revised range. U.S.S.G. § 1B1.10(b)(2)(A).

At day's end, we need not resolve this eligibility debate because we may affirm the district court's judgment under the second requirement. The district court alternatively held that Logan did not warrant a sentence reduction as a matter of its discretion. And we review this decision "under a deferential abuse-of-discretion standard." *Davis-Malone*, 128 F.4th at 834.

5

The court did not abuse its discretion because it reasonably found that a 46-month sentence remained appropriate under the § 3553(a) factors. As an initial matter, the court had just recently sentenced Logan and so was familiar with her offenses and background. *See Chavez-Meza v. United States*, 585 U.S. 109, 118–19 (2018). At that time, it made clear that Logan's conduct represented a "classic case to consider an upward variance" because of the harm that the conduct had caused her victims. Sentencing Tr., R.112, PageID 468. The court thus was "not happy about" using the parties' lower guidelines range (37 to 46 months) rather than the presentence report's higher range (57 to 71 months). *Id.*, PageID 470. But it ultimately chose to do so because of its "great respect" for the government's judgment, especially since FBI agents were some of the victims. *Id.* In short, the court chose its lower 46-month term only reluctantly.

When later refusing to grant Logan a sentence reduction, then, the court referred back to this earlier decision to accept the "reduction from her base offense level" that the parties had proposed "as part of her plea agreement[.]" Statement, R.108, PageID 441. It reasonably found that Logan had already received a lower sentence due to the government's choice not to advocate for "available" threat-of-violence and extortion enhancements. *Id.* And if the government had sought these enhancements, the court added that Logan's guidelines range would have become 46 to 57 months' imprisonment even after applying § 4C1.1(a)'s new two-level reduction. *Id.* The court thus concluded that any further sentence reduction below 46 months would run contrary to the proper balancing of the § 3553(a) factors. In that respect, it reasonably highlighted the "serious concern for public safety" that Logan's crimes had caused, the harms to her victims, and the need to "deter future criminal conduct" and "reflect the seriousness of her offense[.]" *Id.*

Logan raises only one counterargument.  She suggests that the district court's analysis of the § 3553(a) factors rested on a clearly erroneous finding of fact: that she, "not Joseph, made threats of violence."  Appellant's Br. 12.  Logan points out that the court referred to "the significant impact her *threats*, extortion attempts, and intimidation had on her victims" when it discussed those factors.  Statement, R.108, PageID 441 (emphasis added).  As the government notes, however, the court's balancing of those factors did not expressly refer to threats *of violence*.  And all agree that Logan threatened her victims in *other* ways.  Indeed, her plea agreement described her extortion offense as requiring "a true threat to damage the reputation of another[.]"  Plea Agreement, R.83, PageID 236.

We affirm.

**KAREN NELSON MOORE, Circuit Judge, dissenting.** After careful review of the record and caselaw, I respectfully dissent from the majority's decision to affirm the district court's order denying Alexa Logan's motion to reduce her sentence.

I would hold that Logan is eligible for a sentence reduction because there is no evidence that she "use[d] violence or credible threats of violence in connection with the offense." U.S.S.G. § 4C1.1(a)(3). Under the plain terms of § 4C1.1(a)(3), Logan is not responsible for the actions of her co-defendant. "The text of § 4C1.1 specifies that the '*defendant* did not use violence or credible threats of violence.' . . . [A court] cannot simply impute the 'use of violence' to a defendant based on the actions of others." *United States v. Bauer*, 714 F. Supp. 3d 1, 7 (D.D.C. 2024); *accord United States v. Yang*, No. CR 23-100 (JDB), 2024 WL 519962, at *4–5 (D.D.C. Feb. 9, 2024) ("But it does not follow that the Court can disregard the inherently individualized analysis contemplated by § 4C1.1 in general and by the plain text of § 4C1.1(a)(3) in particular."). We reached a similar conclusion when interpreting the plain text of U.S.S.G. § 5C1.2(a)(2). In *United States v. Barron*, we held that § 5C1.2(a)(2), requiring in plain terms that "the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon . . . in connection with the offense," U.S.S.G. § 5C1.2(a)(2), "limits consideration to the defendant's own actions," 940 F.3d 903, 914–15 (6th Cir. 2019); *see also United States v. Bingham*, 88 F.4th 1220, 1224–25 (7th Cir. 2023) (noting that all circuits addressing the issue had adopted the same position). I see no reason to stray from this straightforward conclusion when interpreting the substantially similar language in § 4C1.1(a)(3).

The consequence of this interpretation for this case is that there is no evidence that Logan herself used credible threats of violence. The Government does not directly dispute Logan's argument that she did not make any violent threats. Gov't Br. at 18–19. Instead, the Government

argues that it does not matter who made the threats because the threats were made in furtherance of a conspiracy and can be imputed to her under U.S.S.G. § 1B1.3(a)(1)(B). *Id.* The Government's invocation of a separate Guideline provision is unpersuasive. Section 4C1.1(a)(3) applies where "the defendant did not use violence or credible threats of violence in connection with the offense." According to the guidelines, "'[o]ffense' means the offense of conviction and all relevant conduct under § 1B1.3 . . . *unless a different meaning . . . is otherwise clear from the context.*" U.S.S.G. § 1B1.1 cmt.1(I) (emphasis added). For all the reasons discussed above, it is clear from context that § 4C1.1(a)(3) applies to a specific defendant's actions, not the actions of others. *Accord Yang*, 2024 WL 518862, at *4 n.5. The guidelines instruct as much: "Factors in Chapters Four and Five that establish the guideline range shall be determined on the basis of the conduct and information specified in the respective guidelines." U.S.S.G. § 1B1.3(b). Thus, the specific context of § 4C1.1(a)(3) applies over the general terms of § 1B1.3.

As a final matter, although Logan did not specifically argue before the district court that she did not use threats of violence in connection with the offense, I see this as no barrier to permitting her to make these arguments on appeal. *See* R. 105 (Mot. to Reduce Sentence at 3) (Page ID #432) (claiming § 4C1.1 applies without any argument or analysis); *see also* R. 113 (Mot. for Reconsideration at 1–2) (Page ID #473–74) (arguing that Logan did not make *credible* threats of violence). First, the Government has not argued that Logan should be prevented from making this argument based on the doctrines of waiver, forfeiture, or invited error. I would not raise sua sponte these arguments on behalf of the Government. Second, before the district court, it was clear that the Government did not believe there was evidence that Logan made any threats of violence. As the Government explained at her co-defendant Joseph's sentencing, in contrast to Joseph, Logan's "e-mails and communications did not specifically and explicitly include those threats of

9

physical harm to the victims." R. 120 (Joseph Sent. Tr. at 13) (Page ID #495). It is no wonder then that the Government did not argue that Logan was ineligible for a reduced sentence based on § 4C1.1(a)(3). R. 106 (Opp. to Mot. to Reduce Sentence at 1–3) (Page ID #434–36) (conceding that Logan was eligible for relief pursuant to § 4C1.1). Thus, the Government's argument on appeal is notable not only because it is new, but also because it is entirely inconsistent with how the prosecution approached Logan's case below. Logan's position on appeal is not so irreconcilably inconsistent. Finally, it is significant that the issue of Logan's eligibility for a reduced sentence was raised sua sponte by the district court, and that new counsel was appointed to supplement Logan's pro se motion to reduce her sentence. Considering these reasons together, I would permit Logan to make the full scope of her eligibility arguments on appeal.

To the extent that the Government argues on appeal that Logan is ineligible for a sentence reduction because "the district court was prohibited from lowering her sentence below the low-end of the amended range," the doctrine of invited error prevents the Government from asserting this argument before us. Gov't Br. at 21 (citing U.S.S.G. § 1B1.10(b)(2)(A)); *see also United States v. Carter*, 89 F.4th 565, 568–70 (6th Cir. 2023) (discussing invited error).

Before the district court, and in opposition to Logan's motion to reduce her sentence, the Government agreed that Logan's advisory guideline range was "at Criminal Offense level 21 and Criminal History Category I was 37 to 46 months." R. 106 (Opp. to Mot. to Reduce Sentence at 2) (Page ID #435). The Government then conceded that "[u]pon application of the new provision to [Logan], using the same 3-point reduction as agreed to by the United States at sentencing, her new sentence guideline range is reduced to 30-37 months." *Id.* at 3 (Page ID #436). Instead of opposing Logan's motion on eligibility grounds, the Government conceded eligibility and "ask[ed] the Court to deny relief based on 3553(a) factors." *Id.* at 1, 3 (Page ID #434, 436).

10

For its part, the district court apparently agreed with the Government that Logan's previous total offense level was 21, that her criminal history category was I, and that her previous guideline range was 37 to 46 months. R. 108 (06/26/2024 Order) (Page ID #441). Ultimately, however, the district court denied Logan's motion because it found that she had made credible threats of violence that rendered her ineligible for the two-offense-level reduction under U.S.S.G. § 4C1.1. *Id.*; *see also* R. 117 (08/27/2024 Order at 1–2) (Page ID #479–80) (finding that Logan made credible threats of violence and that the district court would have denied her motion, in the alternative, on § 3553(a) sentencing grounds). Although the district court also stated that Logan had "already received a reduction from her base offense level as part of her plea agreement, and the Government agreed not to pursue available enhancements for threats of violence, and extortion amounts," the district court nevertheless took the Government at its word that Logan's "Previous Guideline Range" was 37 to 46 months. R. 108 (06/26/2024 Order) (Page ID #441). As Logan argues, applying the two-level deduction would reduce her sentencing guideline range to 30 to 37 months of imprisonment, which would not render her ineligible under U.S.S.G. § 1B1.10(b)(2)(A).

Finally, because there is no evidence in the record that Logan herself made threats of violence, the district court abused its discretion by "rel[ying] on clearly erroneous findings of fact . . . ." *United States v. Hale*, 127 F.4th 638, 640 (6th Cir. 2025). Under these circumstances, the order denying Logan's motion to reduce sentence cannot stand.

For these reasons, I respectfully dissent and would vacate the district court's order and remand for further proceedings.