NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0063n.06

Case Nos. 25-3501/25-502

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Jan 30, 2026

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| SHANE E. BOWLIN, | ) | |
|     Defendant-Appellant. | ) | O P I N I O N |
| | ) | |

Before: BOGGS, NALBANDIAN, and MATHIS, Circuit Judges.

**NALBANDIAN, Circuit Judge.** Shane Bowlin moved for a reduction to his 195-month sentence after the United States Sentencing Commission retroactively amended the Sentencing Guidelines, decreasing the sentencing range that would have applied when the court originally sentenced him. The district court denied that motion. Bowlin appeals. But because he fails to show that the court abused its discretion, we affirm.

**I.**

Bowlin's crime of choice was bank robbery, and for that he's been sentenced to multiple decades in prison. His first robbery, in the early 2000s, earned him 114 months in prison, followed by five years of supervised release. And less than two months after he completed that prison sentence, he got caught—by his own admission—"casing" more banks to rob. R.26, Order, PageID 146. So he spent nine more months in jail, with three years of supervised release to follow. And what did he do after he got out? He robbed not one, not two, but *three* more banks—and attempted to rob a fourth. And when police apprehended him, they found a trove of child

pornography. So Bowlin faced five more charges: three counts of bank robbery, one count of attempted bank robbery, and one count of possession of child pornography.

Bowlin pleaded guilty to those charges. At his sentencing hearing, the district court calculated his recommended sentencing range under the Guidelines as 188–235 months of imprisonment. That range resulted in part from the district court's application of a two-point enhancement to Bowlin's criminal-history score, which applied because he'd committed the offenses "while under a criminal justice sentence"—i.e., the supervised-release term from his previous bank-robbery case. *Id.* at PageID 148. After calculating that range, the district court accepted the parties' Rule 11(c)(1)(C) plea agreement and sentenced Bowlin to the agreed-upon, within-Guidelines sentence of 195 months in prison.

A little less than ten years later, the Sentencing Commission promulgated Amendment 821. That amendment narrowed the class of defendants eligible for additional "status points" to those with at least seven criminal history points *before* applying the enhancement. Bowlin had only five points before the enhancement. So under the newly amended Guidelines, he wouldn't have received the additional points, and his recommended sentencing range would've been lower.

Because the Sentencing Commission made Amendment 821 retroactive, Bowlin moved under 18 U.S.C. § 3582(c)(2) for a reduced sentence. The district court denied that request. It accepted that, without the status-point enhancement, Bowlin's Guidelines range was lower than originally calculated. Instead of the original 188–235 months, the recommended range was now 168–210 months. Nonetheless, the district court let its original sentence stand. First, it noted that the original sentence of 195 months of imprisonment still fell within the amended Guidelines range. And aside from that, the original sentence was still a "measured and reasonable outcome for a Defendant who committed a spree of bank robberies across three states, possessed a cache of

2

child pornography, was on federal supervision at the time, [and] has a history [of] violent and disturbing conduct." *Id.* at PageID 152. The district court also took special note of the fact that nine-and-a-half years in prison (in the earlier bank robbery case) wasn't enough to deter Bowling from reoffending—indeed, from upping his game. Finally, it noted that Bowlin's conduct while imprisoned cut in favor of maintaining his sentence as it stood. Although he'd taken some positive steps by engaging with a "variety of educational and rehabilitative programs," Bowlin also racked up an extensive record of over a dozen prison infractions, including possessing a dangerous weapon. *Id.* That infraction occurred just seven months before he filed his motion for sentence reduction.

For those reasons, the district court declined to reduce Bowlin's sentence. So Bowlin appealed.

## II.

We review denials of motions for resentencing de novo as to the defendant's eligibility for resentencing, and for abuse of discretion as to the district court's ultimate selection of a new sentence. *United States v. Riley*, 726 F.3d 756, 758 (6th Cir. 2013). The latter standard is a "deferential" one. *United States v. Rollins*, No. 24-3945, 2025 WL 1639639, at *2 (6th Cir. June 10, 2025). In cases like this one, where the parties concede the correctness of the district court's eligibility determination, we review only its subsequent decision on the appropriate sentence under that deferential standard. And the "presumption of reasonableness that applies to within-guidelines sentences continues to apply at the sentence-modification stage." *United States v. Davis-Malone*, 128 F.4th 829, 834 (6th Cir. 2025).

The district court didn't abuse its discretion here. It considered the relevant 18 U.S.C. § 3553 factors, taking into account a broad range of information. In evaluating Bowlin's offense

conduct, history, and characteristics, the district court noted his "spree" of robberies, "cache" of child pornography, and generally "violent and disturbing conduct." R.26, PageID 152. And regarding deterrence, the district court observed that Bowlin's earlier 114-month sentence did little—perhaps nothing—to dissuade him from future criminal activity, counseling against a reduced sentence here. On top of that, Bowlin's *current* sentence didn't have much effect on his decision making, as shown by the dozen-plus prison-discipline infractions he's committed since he started serving his time.

Based on those data points, the district court held that its "consideration of the relevant 18 U.S.C. § 3553(a) factors" yielded the conclusion that "the imposed sentence of 195 months imprisonment is sufficient but not greater than necessary" and that "a reduction would undermine the purposes of sentencing." *Id.* at PageID 153.

Bowlin's counterarguments are unconvincing. We'll take each in turn.

First, Bowlin argues that the district court "place[d] no weight" on the amended Guidelines range. Appellant Br., pp.11–12. Not so. In fact, the district court *started* its analysis by taking stock of the amended Guidelines range. The rest of its analysis went to showing why, "*despite* the reduced Guidelines range," the original sentence remained the appropriate one. *Id.* at PageID 153 (emphasis added).

Second, Bowlin contends that the district court failed to address "mitigating factors" he raised. Appellant Br., p.12. Again, that's not the case. The district court "acknowledge[d] that [Bowlin] is participating in a variety of educational and rehabilitative programs." R.26, PageID 152. But it found those efforts were outweighed by Bowlin's repeated prison infractions. And we've upheld district courts' resentencing decisions even when they opted not to "expressly refer to" the defendant's rehabilitation arguments, since courts have "the discretion to highlight only the

main factors that drove [their] decision[s]." *Davis-Malone*, 128 F.4th at 835 (emphasis omitted). The district court in this case recognized Bowlin's rehabilitative efforts and expressly addressed on the record why it opted not to weigh those efforts in his favor. That's well within its discretion to have done. *See Rollins*, 2025 WL 1639639, at *3.

Third, Bowlin asks us why he shouldn't receive a new sentence that falls at the same point, proportionally speaking, in his new sentencing range as his old one. In other words, "why would a 15% above the low-end of the adjusted range not suffice now?" Reply Br., p.3. But the Supreme Court has "rejected [the] claim that courts must choose an amended sentence at the point in an amended guidelines range that is 'proportional' to the point at which the original sentence sat in the original range." *Rollins*, 2025 WL 1639639, at *2 (citing *Chavez-Meza v. United States*, 585 U.S. 109, 116–19 (2018)). As the Supreme Court has explained, it's "unsurprising that changing the applicable [Guidelines] range may lead a judge to choose a nonproportional point on the new range," because the judge's sentencing decision "will often simply reflect the judge's belief that the chosen sentence is the 'right' sentence." *Chavez-Meza*, 585 U.S. at 117.

Finally, Bowlin claims that the district court placed "undue weight" on the parties' Rule 11(c)(1)(C) plea agreement and "failed to consider . . . that a court may still reduce a sentence" even after accepting such a plea agreement at the original sentencing. Appellant Br., p.13. Once more, that's not the case. The district court never questioned that it had the *authority* to resentence Bowlin despite the 11(c)(1)(C) plea agreement specifying 195 months of imprisonment; it simply decided not to exercise that authority based on its re-analysis of the § 3553 factors.

At day's end, the district court had a duty to "consider" Bowlin's arguments, but "[i]t did not have a duty to agree with the arguments." *Rollins*, 2025 WL 1639639, at *3 (emphasis omitted). And what's more, it needn't "engag[e] in a point-by-point rebuttal of every argument"

that Bowlin presented. *Davis-Malone*, 138 F.4th at 834. We find that the district court performed its work correctly.

## III.

For these reasons, we affirm.